(69 Misc. Rep. 588.)
### ASPHALT PAVING & CONTRACTING CO. v. CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. November, 1910.)

1. MUNICIPAL CORPORATIONS (§ 368*)—STREET PAVING CONTRACT—CONSTRUCTION.

Where a contract for an asphalt pavement over a stone block pavement bound the contractor to keep the pavement in repair for 15 years, and with a sufficient foundation, and an asphalt pavement would begin to need repairs in 4 or 5 years, the contract will be deemed to contemplate the necessity of repairs during at least 10 of the 15 years, and not to be a guaranty that the pavement, if laid with the best material and workmanship, would not require repairs for 15 years, and the contractor cannot avoid making repairs within the prescribed period on the ground that defects were not due to inferior workmanship or material but to defective plans of the pavement.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. § 368.*]

2. MUNICIPAL CORPORATIONS (§ 368*)—PAVING CONTRACT—DEFECTIVE PLANS —EFFECT.

If defects in the plan of a pavement or insufficiency of the pavement render the contract requiring the contractor to make repairs impossible of performance, both parties to the contract would be excused from further performance, and neither could recover damages for the part not performed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. § 368.*]

3. MUNICIPAL CORPORATIONS (§ 368*)—PAVING CONTRACT—NOTICE TO REPAIR PAVEMENT—DEFICIENCY.

Where a paving contract provided that notice to make repairs should be served on the contractor either personally or by leaving it at its residence or on its agent in charge of the work, the service upon another company acting as agent of the contractor in making repairs under the contract was sufficient.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. § 368.*]

Action by the Asphalt Paving & Contracting Company against the City of New York. On motion of plaintiff to set aside the verdict and for a new trial. Motion denied.

Kellogg & Rose, for the motion.
Archibald R. Watson, Corp. Counsel (Francis Martin and William H. Kehoe, of counsel), opposed.

FOOTE, J. The street paving contract which is the subject of this action required the contracting company, plaintiff's assignor, not only to lay the pavement, but to keep it in repair for a period of 15 years. Thirty per cent. of the contract price, or $90,835.90, was reserved by the city to be paid to the contractor during the last 10 of the 15 years, at the rate of 3 per cent. per year, provided the contractor made the repairs, on being notified so to do. The contractor made the repairs during 10 of those years, refused or neglected to make the repairs for the eleventh year (1908), and then assigned its claim for further payments on the reserved fund to plaintiff, who brings this action to re-

cover the installment of $9,083.59, which by the contract would be payable in 1908, provided the repairs were made after notice.

The street was out of repair in the spring of 1908, the city gave notice to repair (the sufficiency of which will be considered later), and the contractor refused or neglected to repair, whereupon the city proceeded to have the repairs made, as the contract permitted it to do, at an expense greater than $9,083.59, the installment payable that year. Notwithstanding this, plaintiff has brought this action to recover the installment payable in 1908, alleging full and complete performance of the contract.

At the trial it gave evidence intended to excuse nonperformance in respect of the repairs for 1908, or upon which to predicate a waiver of performance. This was upon the theory that the provision for maintaining the pavement in repair was in the nature of a guaranty of the quality and workmanship of the original pavement, that the defects in the pavement were not due to inferior workmanship or material, but to a defect in the plan of the pavement itself, which consisted in laying an asphalt surface over a stone block pavement; and the claim was that the best material and workmanship would not produce a pavement suitable or sufficient for the traffic conditions on First avenue, and that the contract should be interpreted as not intended to provide for repairs due to defective plans. It was claimed that the stone block foundation was not sufficiently stable to support the pavement under the traffic conditions on that street, and that hence the pavement was a failure for that reason, and that the fault was that of the city in designing such pavement. On that theory plaintiff claimed the right to recover the whole contract price as upon performance upon its part.

In support of this view plaintiff's counsel relied upon People ex rel. North v. Featherstonhaugh, 172 N. Y. 112, 64 N. E. 802, 60 L. R. A. 768; Cameron-Hawn Realty Co. v. City of Albany, 134 App. Div. 722, 119 N. Y. Supp. 128.

The first case is distinguishable from this case. It was there held that the contract for maintaining the pavement in repair for a period of eight years was but a guaranty as to the quality and character of the pavement, and so that the property owners upon whom the expense of the pavement was to be assessed could not be heard to object to such a form of contract, although the city was required by statute to keep pavements in repair at the expense of the city after they had been once constructed at the expense of the adjoining property. Although the contract for repairs in that case was construed as a guaranty as to the durability of the pavement, the court, in the course of its opinion, said:

. "There does not appear to be any controversy that the asphalt pavement properly constructed with proper material upon a concrete base will remain in good condition for the period named in the specifications, or even for a longer time."

And further:

"A guaranty on the part of the company as to the durability of the pavement affords a simple and complete remedy which fully protects the public, and, when the time for which the guaranty continues is no longer than the ordinary durability of the pavement when laid with the best workmanship

and material, it is not in contravention of the provisions of a municipal charter requiring repairs to be made at the expense of the city at large."

In the present case, it appears from the testimony of the only witness who spoke upon that subject, who was an expert on asphalt pavement, that with a proper and sufficient foundation and with the best of material and workmanship an asphalt pavement on this street would begin to need repairs in four or five years. Had that fact appeared in the Featherstonhaugh Case, a different construction of the contract in that case would necessarily have been adopted, although the period for repairs there was only for eight years. But, had the contract in that case required repairs over a period of fifteen years, the court could not, consistently with the above quotations from its opinion, have construed the contract for repairs as a mere guaranty of the quality and character of the pavement. The provisions for maintenance repairs in the present contract must be construed, in view of the testimony, as contemplating the necessity for repairs during at least ten of the fifteen years, and not as in the nature of a guaranty that the pavement, if laid with the best of material and workmanship, would not require repairs for fifteen years. Hence a considerable part of the contract price was intended to pay for repairs in addition to the first cost of the pavement. How much was so included does not appear.

Nevertheless, plaintiff claims that it may recover from the city the full contract price and at the same time hold itself excused from making any repairs during the last five years of the fifteen-year period, when more repairs might be expected to be required than during previous years, and for this plaintiff relies upon the cases of Cameron-Hawn Realty Co. v. City of Albany, 134 App. Div. 722, 119 N. Y. Supp. 128; MacKnight Flintic Stone Co. v. Mayor, 160 N. Y. 72, 54 N. E. 661.

In the first case a pavement was constructed in the city of Albany, and the contract and specifications provided for a concrete foundation and an asphalt surface. The contractor complied strictly with these plans and specifications, and it developed within two years that the foundation was wholly insufficient. Five per cent. of the contract price was reserved for two years; the contractor being required to keep the pavement in repair during this time. There was nothing in that case to show that anything was added to the contract price for future repairs, but the case was disposed of on the theory that the reserve fund was intended only as a guaranty for good workmanship and material. In that respect, the case is entirely different from the present case.

Moreover, the case was decided on the authority of MacKnight Flintic Stone Co. v. Mayor. In that case the contract was to make a boiler room for the city according to certain plans and specifications provided by the city and to turn the same over to the city, guaranteed water-tight and damp-proof for five years from the date of the acceptance of the work. Plaintiff did the work exactly in conformity with the plans and specifications, and the boiler room proved not to be water-tight. The court held that the guaranty of the plaintiff applied to his own work and materials, and that, as the failure of the room to be

water-tight was due to the defective plans and not to plaintiff's workmanship, the plaintiff was entitled to recover.

There was no question in this case of an addition to the contract price for the expense of maintenance over a period of years. Hence these cases do not seem to be applicable here.

The defect in the plan of the pavement in the present case is said to be that the stone block foundation was not sufficiently stable to hold the asphalt in place under the traffic conditions on First avenue. These traffic conditions were as open and apparent to the contractor as to the city. It is said that the volume of traffic increased, and that the city did nothing to regulate this traffic and prevent use of this pavement by vehicles too heavily loaded for the pavement; but these are conditions which might reasonably have been anticipated by the contractor as well as by the city and as to which some provision might have been inserted in the contract for the protection of the contract. It was no breach of the contract for the city to refrain from adopting special traffic restrictions, nor is it suggested that the city has failed to perform all the conditions of the contract on its part.

But if it be assumed that the defect of plan or insufficiency of this pavement rendered the contract for repairs impossible of performance within the rule formulated in the cases of Dolan v. Rogers, 149 N. Y. 489, 44 N. E. 167; Buffalo & Lancaster Land Co. v. Bellevue Land & Improvement Co., 165 N. Y. 247, 59 N. E. 5, 51 L. R. A. 951; Labaree Co. v. Crossman, 100 App. Div. 499, 92 N. Y. Supp. 565—then, as was said in the first case:

"The effect of the rule is to excuse both parties from further performance without giving to either the right to recover damages for the part not performed."

It follows, I think, that, no matter how defective may have been the city's plan, if plaintiff is entitled to be relieved of the burden of repairs on that account, it cannot recover from the city any further payments on the contract.

It appeared from the evidence that all, or substantially all, of this pavement had been relaid during the 10 years prior to 1908 in the form of repairs, and from that circumstance plaintiff contends that it is not bound by the contract to recreate a pavement that no longer exists. There does not seem to be any merit in this contention. The contract was to keep the pavement in repair for 15 years. This would not be satisfied by once relaying a given portion of the pavement.

The next contention is that the notice to repair was insufficient. It appeared that shortly after the pavement was first completed the Warren-Scharf Company, the contractor, retired from business in the city of New York, and one of its officers notified an official of the city that the Barber Asphalt Company would thereafter look after its contracts in the city of New York, of which it had several. From that time on until 1908 notices to repair were sent to the offices of the Barber Company, and that company made all repairs under this contract and under others. In the spring of 1908 informal notice to make further repairs was given, as had been customary, and, when it was found that the Barber Company did not intend to make further re-

pairs, the city set about serving a more formal notice. The officers in charge of this work for the city had information to the effect that the Warren-Scharf Company had assigned its contract to the Barber Company and that the Barber Company was acting as its assignee and successor. In this belief, notice to repair was addressed to the Barber Company as assignee, and was personally served at its office in the city of New York. The contract provided that such notice should be served on the contractor, either personally or by leaving it at his residence, or on its agent in charge of the work; and it was held at the trial that the notice as served on the Barber Company was sufficient notice under the contract, if the Barber Company was at that time the agent of the Warren-Scharf Company in charge of the work of repairs under this contract. That question was left to the jury, and by its verdict it has necessarily found that the Barber Company was such agent. Plaintiff did not see fit to give any evidence as to the nature of the arrangement between the Barber Company and the Warren-Scharf Company by which the former company had made all repairs under this and other contracts prior to 1908. The manager of the New York office of the Barber Company as a witness testified that he made these repairs by instructions from the executive office of the Barber Company in Philadelphia; that, in the spring of 1908, he was instructed by the same officers not to make the repairs demanded by the city under this contract at that time. These facts were sufficient to make a question for the jury as to whether such an agency existed. There was no proof that it had been terminated, if it once existed.

On this motion plaintiff's counsel refers to a number of cases in which the requirements of a certain form of notice have been construed strictly in actions against sureties and against life insurance companies, where notice to pay premiums or assessments were claimed to have been given to forfeit the insurance. This is not such a case. There is no occasion here to construe the requirement as to notice with special strictness on account of any supposed hardship or as in the case of sureties, and I am satisfied that the case was properly submitted to the jury upon that question.

Plaintiff's motion must be denied, with $10 costs.

Motion denied.