[No. 17599. Department One. March 8, 1923.]

## PORT OF SEATTLE, *Respondent*, v. PUGET SOUND SHEET METAL WORKS, *Appellant*.[1]

CONTRACTS (86)—BUILDING CONTRACTS — GUARANTY TO REPAIR— LIMITATIONS. Under a contractor's guaranty to keep a roof in perfect condition for ten years, and to repair it without cost within twenty-four hours after notice of any leak, the guaranty is not limited to repairs in case of leaks.

SAME (86)—BUILDING CONTRACTS—GUARANTY TO REPAIR—SCOPE AND EXTENT OF OBLIGATION. Where a contractor built a roof on certain plans and specifications and guaranteed to keep it in perfect condition for ten years, the guaranty covers all defects, no matter what might be the cause, and is more than an agreement to do the work according to the plans and specifications.

Appeal from a judgment of the superior court for King county, Davidson, J., entered September 5, 1922, upon findings in favor of the plaintiff, in an action on contract tried to the court. Affirmed.

*Tucker & Hyland (Ford Q. Elvidge, of counsel), for appellant.*

*Bradford & Snyder, for respondent.*

MACKINTOSH, J.—In 1914, the appellant constructed a roof on one of the buildings owned by the respond-

---

[1] Reported in 213 Pac. 467.

ent, under a contract based upon certain plans and specifications, which contained the following provision:

"33. Guaranty. Each proposal must be accompanied by a form of guaranty which must cover a period of not less than ten years, during which time the repairs must be made free of charge to the Port Commission. If the roofing is not placed by the manufacturer of the materials, the guaranty must be made jointly by the contractor and the manufacturer."

In compliance with this requirement of the contract, the following letter of guaranty was given by the appellant:

"Seattle, Wash., August, 1914.
"Port Commission of the Port of Seattle,
"Seattle, Wash.
"Gentlemen: We hereby guarantee to keep the roof installed by us on the freight sheds of the Smith's Cove project of the Port of Seattle in perfect condition for a term of ten years from this date. If this roof should leak within this time, we agree to repair the same without any cost to the Port Commission, the work to be done within twenty-four hours after receiving notice of such leak. Provided, however, that we shall not be held responsible for damage done to the roof by workmen or others over whom we have no control, or by the defects in the building itself or by fire or lightning.
"Puget Sound Sheet Metal Works,
"(Signed) D. W. Bowen, Pres."

The roof was constructed according to the plans and specifications; the material used in the construction was purhased from a reputable manufacturer of petroleum products, and was of the exact kind, grade and quality called for by the specifications. All the material was inspected by the officers of the respondent, and was put on the roof under the direction and supervision of respondent's engineer. When the roof was completed, it was inspected and passed by re-

spondent's officers.    After some months of usage, the asphalt in the roofing material melted and dripped down on the floor below.    In order to further prevent this dripping, respondent caused paper to be tacked below the roof, and for the expense in putting up this paper this action was brought, based upon the guaranty contract above set forth.

It is the claim of the appellant that, under this contract, it is not responsible in this action.    It is argued that the contract only obligates the appellant to make repairs in case of the roof leaking, and that the roof did not, as a matter of fact, leak, for it was at all times water-tight, and merely the roofing material itself melted and flowed.    As we read the guaranty, it is not subject to this interpretation.    The first sentence in the guaranty provides that the appellant shall keep the roof in perfect condition for ten years.    In this sentence there is no reference to the causes which might render the roof imperfect, but is a broad, general guaranty to keep it in perfect condition.    The next sentence does not restrict the scope of the first sentence, but merely provides what shall be done in case the imperfect condition arises from leaking, where it is agreed that, after notice has been given, the repair of the leakage shall be made within twenty-four hours. As we read it, this second sentence was put in for the purpose of securing the speedy repair of the roof in the event that it should leak, whereas, under the first sentence, no time is specified in which the repair should be made for other defects than leaking.    The third and last sentence in the guaranty exempts the appellant from the duty to keep the roof in perfect condition where the imperfection is occasioned by certain acts there provided.    We cannot, therefore, agree with appellant's contention that the obligation to repair was limited only to the contingency of a leaking roof.

The next question—and the important one in the case—is as to the extent of the guaranty agreement. It is the claim of the appellant that it constitutes only an undertaking to faithfully construct the roof in compliance with the plans and specifications, whereas the respondent claims that the guaranty contract is more than an agreement to construct the roof according to plans and specifications and to furnish material and workmanship, under the supervision of the respondent's officers, which shall pass inspection and be satisfactory, and that it was a separate agreement to maintain and repair; that the appellant, under his contract, not only guarantees the quality of materials and workmanship, but also guarantees, no matter what might be the cause of the imperfect condition of the roof, to remedy such imperfect condition and to keep it in perfect condition.

Cases arriving at what are apparently contrary results involving the guarantees of contractors, given in conjunction with their contracts to do the work according to plans and specifications, may be found in many of the books. But the apparent conflict, in large measure, disappears when these cases are analyzed, and the basis of their decision seems to be that it is always a question for determination as to what was meant by the guaranty agreement, and that if the proper interpretation of that agreement is that the contractor was undertaking to do more than to merely perform the work and furnish the materials in compliance with the plans and specifications, he is bound by the wider guaranty and must maintain and keep in repair the work, no matter whether the imperfect condition arose from his failure to comply with the plans and specifications, or may have arisen by reason of a defect in the very plan of construction itself, independent of any other cause. Whereas, if the agreement is

properly interpreted as having reference only to work as it is called for by the plans and specifications, that is, that the contractor's guaranty only binds him to that extent, and that when he has performed the work and furnished the material according to the plans and specifications, his guaranty is merely that the work will prove as satisfactory as can reasonably be expected, taking into consideration the plans and specifications, the further responsibility will then rest upon the owner.    If this is the true distinction between the cases, it would seem to clearly follow that, in the case at bar, the appellant did more than to merely guarantee that the work would be done according to the plans and specifications and so far as a strict compliance with them would result in a satisfactory roof, for the plain language of the guaranty is that appellant will keep the roof in perfect condition.

This was an independent agreement, entered into by the appellant as part of the consideration of the contract being let to it, and places the burden upon the appellant, not only to construct the roof according to the plans and specifications, but of thereafter, for a period of ten years, keeping it in perfect condition. So far as we have investigated the cases, it is a guaranty operating more strictly against the contractor than any that have come to our attention.    The language is plain and hardly seems subject to any other interpretation than that which we are according it.

Among a great many cases that bear upon this question, the following have been cited by the appellant as sustaining its view that, under the guaranty, the contractor is absolved when he has complied with the plans and specifications.

*Kuhs v. Flower City Tissue Mills Co.,* 104 Misc. Rep. 243, 171 N. Y. Supp. 688, involved the construction of foundation walls, where the contractor guaranteed

that they would be water-tight.   The court held that
the leakage having occurred through no fault of the
contractor, he was not liable under the guaranty; that
the specifications had provided how the walls should
be built and how the water-proofing should be done,
and that the contractor, having complied with those
specifications, and the walls still proving unsatisfac-
tory, it was not the fault of the contractor, but of the
owner.   The guaranty in that case was not as binding
as the one in the case at bar, although the principle
enunciated in that case seems to be contrary to that
to which we have arrived, and supported by cases
which we will hereinafter cite.

In the case of *Rosenblum v. New York Butchers'
Dressed Meat Co.*, 61 Misc. Rep. 263, 113 N. Y. Supp.
604, the contractor agreed that gates which he was to
construct of first-class material and workmanship
would "operate satisfactorily when erected."   The
court held that this guaranty was complied with if the
contractor used first-class materials and workmanship,
and that the gates operated as satisfactorily as could
reasonably be expected, considering the plans.   But
what the court would have decided had the guaranty
provided that the gates should remain in perfect con-
dition cannot be determined from that opinion.

*Gilbo & Swartz v. Merrill's Estate*, 92 Vt. 380, 104
Atl. 10, L. R. A. 1918F 387,  involved a contract for a
water supply system.   The contract specified the sizes
of the pipes and guaranteed efficiency of operation.
The court held the guaranty was of no more than ef-
ficiency if the work was properly carried out accord-
ing to the specifications.

*MacKnight-Flintic Stone Co. v. City of New York*,
160 N. Y. 72, 54 N. E. 661, was another New York case
which dealt with a contract for the erection of a court-

house in the city of New York, according to plans and specifications.    There was to be a cellar of the quality and grade of material specified, to be built under the supervision of the city engineer, who had the power, under the contract, to change the plans so as to secure a good result, and the contractor guaranteed that the work would be absolutely water-proof for five years, and that if any water leakage occurred in that time it was to be made good by him.    The court held that, by this guaranty, the contractor did not agree that the plans and specifications would make a water-tight cellar, but that if the plans and specifications were followed would result in a water-tight cellar, they would be followed by him, and therefore, if the fault were in the plans, he was not responsible, although the cellar might prove to be not water-tight.    In that opinion, the cases on this question are reviewed and it is held that a reasonable construction of the covenant of guaranty is that the guaranty related only to the quality of the work and materials and was not a guaranty of the perfection of the plans.

In *Bush v. Jones,* 144 Fed. 942, the contractor was constructing the foundation of a building, the contract providing the "whole to be made perfectly water-tight," and guaranteed satisfaction.    The court held this did not constitute a guaranty of a water-tight building, as the specifications provided in detail the method of construction, but that it was only a guaranty of the contractor's compliance with those specifications.

In *Tide Water Bldg. Co. v. Hammond,* 144 App. Div. 920, 129 N. Y. Supp. 355, a building contractor guaranteed a roof to be water-tight, but he was held not bound to do more than the specifications required him to do.

*Conway Co. v. City of Chicago,* 274 Ill. 369, 113 N. E. 703, involved the contractor's liability for the

repair of a portion of a street. The contractor agreed to keep the improvement in satisfactory order for five years. It was held that, where he showed that the pavement was constructed in accordance with the requirements, and that the defects were caused by the usage to which the street was subjected after its construction, he was not liable for more than the defects resulting from faulty quality of materials used or workmanship employed, and that his guaranty did not extend to the propriety of the design or plan. In that case, the court said:

"While it was within the power of the contractor to insure the plans and guarantee the sufficiency of the specifications to cause the pavement to last for five years regardless of all defects or their origin, appellant will not be presumed to have so guaranteed such plans and specifications. A guaranty of design or plan should not be inferred, but must be clearly expressed in the contract."

The court then refers to certain cases imposing liability on the contractor and distinguishes those cases on the ground that in them—

". . . the contract in specific terms guaranteed against the defects causing injury to the work, or the contractor, from his experience and from facts generally known to persons acquainted with the character of the work being done, knew that an injury might reasonably be anticipated to arise in the way that it was actually brought about in the specific case."

Turning to the other cases arriving at a contrary result, it appears they involved guaranties more nearly similar to the one in the instant case than those in the cases we have just discussed.

*City of Akron v. Barber Asphalt Paving Co.*, 171 Fed. 29, was a case arising out of a contract of paving, in which there was a guaranty that the contractor would keep the paving in repair for ten years. The

court held that, although the work was done according to the plans and specifications and laid under official inspection, the contract of guarantee was in force and that, for a period of ten years, the contractor should make all necessary repairs, as that was the evident intent of the guaranty contract.

*Barber Asphalt Paving Co. v. City of St. Paul,* 224 Fed. 842, was another paving contract case where the contractor guaranteed the paving for ten years and agreed to keep the pavement in good and sufficient repair during that time.    It was held that, even though the paving became defective through causes other than those over which the contractor had any control, he was not relieved from his guaranty to repair.

In *Cameron-Hawn Realty Co. v. City of Albany,* 207 N. Y. 377, 101 N. E. 162, the contractor stipulated in a paving contract with the city to keep the paving in repair for ten years, and although the paving had been laid in strict accordance with the specifications, and the defects arose from the defective plan, yet the contractor was held to his agreement.    The court said:

"The possibility of defects in the pavement, arising through its use, after completion, was foreseen by the parties, and express provision for their repair was made in the contract, . . . ."

The court then distinguishes another case coming to a contrary conclusion and holds the result in that case correct for the reason that the contract merely guaranteed the work would remain sound and perfect for a period of ten years by following the requirements of the contract.

*Asphalt Paving & Construction Co. v. City of New York,* 69 Misc. Rep. 588, 127 N. Y. Supp. 794, presented the guaranty of a contractor to keep a pavement in repair for fifteen years, and holds that he is bound to make repairs during that time, even though the defects

were not due to inferior workmanship or material, but to originally defective plans, and distinguishes other cases on the ground that they presented "but a guaranty as to the quality and character of the pavement," and adds:

"But, had the contract in that case required repairs over a period of fifteen years, the court could not consistently . . . have construed the contract for repairs as a mere guaranty of the quality and character of the pavement . . . and not as in the nature of a guaranty that the pavement, if laid with the best of material and workmanship, would not require repairs for fifteen years. Hence, a considerable part of the contract price was intended to pay for repairs in addition to the first cost of the pavement."

*Gilfillan v. City of Bartlesville,* 46 Okl. 428, 148 Pac. 1012, held that an undertaking to maintain in good condition is intended as an implied guaranty of the durability and is ample as against any defects in the same as originally made.

In *City of Lakeview v. MacRitchie,* 134 Ill. 203, 25 N. E. 663, there was a guaranty that certain work to be done according to specifications and the direction of an engineer would remain in good condition for a year, and that that guaranty was broken if the work failed to remain in good condition during that time, even though the failure was not caused by defective materials or workmanship.

The court said:

"Thus knowing the whole plan and design of the work, and being fully advised that they would be compelled to follow the directions given by the engineer, and conform to his judgment in respect to all matters of detail not particularly determined by the contract and specifications, they warranted that the work would remain in good condition for one year from the time of its acceptance by the town. The clear and natural import of the language used, when applied to the sub-

ject-matter of the contract, . . . was that the structure or work, as an entirety, which was the joint product of the plan or design, the labor bestowed, and the materials furnished,—all three combined,—would remain in good condition.  No reason is perceived why contractors may not guaranty against all defects, whatever their origin,—whether they arise from insufficiency of the materials supplied, from unskillfullness of workmen, or from unfitness of the plan or design, whether devised by the one or the other of the parties to the contract, or by some other person.  In case of a contract with such warranty, it will be presumed that the consideration for the guaranty was included in the price agreed to be paid for the work to be done. It is not unreasonable to suppose that one desiring a fabric, or structure, or an apparatus, or a piece of mechanism, to be made, the idea of which is his own, or that of his servant or agent, may wish to take the judgment as to its practicability, usefulness, and durability, of some person or persons who have a practical knowledge and experience in the construction of things of that sort, and, in such a case, the requirement of a guaranty would be an effectual way of getting the benefit of such judgment.  It is the province of the courts to enforce the contract which the town and those contractors have made,—not to make a contract for them.  It must be presumed that, had it been their intention to limit the guaranty to the workmanship of the contractors and their servants, and to the materials furnished, such intention would have been expressed in the contract.''

It seems to us that this language just quoted is specially applicable to the case before us, and our conclusion is that the trial court was correct in rendering judgment for the respondent, which judgment is affirmed.

MAIN, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.