[No. 37944.   Department One.   February 17, 1966.]

GEORGE I. TEUFEL *et al., Respondents,* v. WILLIAM S. WIENIR *et al., Appellants.*\*

*Bogle, Bogle & Gates, Don Paul Badgley,* and *Richard L. Young,* for appellants.

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen,* for respondents.

WEAVER, J.—This case poses the question of whether a contractor is liable under his guaranty in a standard form

\*Reported in 411 P.2d 151.

construction contract of the American Institute of Architects when the construction failure is due to a design and not to a construction defect.

Defendants, William S. Wienir and Birdye F. Wienir, his wife, appeal from a money judgment against them. The judgment is based on two promissory notes given as partial payment on a construction contract.

The basic question on this appeal is whether plaintiffs, the prime contractors for the erection of a building, are liable in damages for the inadequacy of the curtain wall installed on the "high rise building." This requires an interpretation and a determination of the legal effect of the terms of the construction contract and of a stipulation between the parties for a dismissal of a prior court action.

The unchallenged findings establish the following:

Plaintiffs, doing business as George E. Teufel Company contracted with defendants, Wienir, to build a 117 unit, high-rise apartment building in Seattle.

The construction specifications prepared by defendants' architect prescribed the use of a trade name type of curtain wall: "Teclar Projected Casement Series No. 1600." The specifications were modified by defendants' architect by a reduction to "Casement Series No. 1400." No error is assigned to the court's finding that:

> This change resulted in a less costly curtain wall and one of lighter construction which was not suitable to this high rise building. Leaks in the curtain wall have developed and are due to the inadequacy of the prescribed curtain wall for the high rise building.

The specifications required that the curtain wall be fabricated by a subcontractor:

*Workmanship*

> Only first quality workmanship executed by skilled mechanics shall be acceptable. *All fabrication shall be done at the factory by a manufacturer regularly engaged in the manufacture of this kind of work with sufficient experience in the opinion of the Architect to execute the work for this project. It shall be the responsibility of this subcontractor to produce curtain walls and windows of first class quality which will not leak or allow any weather*

*infiltration,* will permit free movement without generation of such infiltration nor of noises or visible distortion of any kind and which will meet all other requirements of this specification regardless of the materials, workmanship and methods specified or shown. *If, in the opinion of the curtain wall subcontractor, it is necessary to modify the materials, workmanship, and methods specified to produce work which will meet the above requirements, he shall so state in writing to the architect before commencing any work, or be bound by the specifications to construct the work to meet the above requirements.* However, any change in the materials, workmanship or methods specified shall first be approved in writing by the architect, and shall involve no additional cost to the owner. This responsibility extends to and includes responsibility for glass and glazing of window walls (which is specified as a separate subcontract) and the curtain wall subcontractor shall similarly indicate any change he may require in such work as specified. (Italics ours.)

Further, the specifications required that the curtain wall be installed by the subcontractor.

*All erection shall be by the manufacturer of the curtain wall and shall not be sublet by the General Contractor to any other subcontract.* (Italics ours.)

Thus the curtain wall was designated by defendants' architect by trade name, standard and type. The contract specifications required that it be fabricated and erected by a subcontractor "with sufficient experience *in the opinion of the architect* to execute the work for this project."

Teclar Aluminum Company, later acquired by Fentron Industries, Inc., manufactured and erected the curtain wall. Neither Teclar nor Fentron gave any statement to the architect that it was necessary to modify the materials, workmanship and methods specified to produce work which would meet the requirements of the contract specifications.

The contract was made subject to the Standard General Conditions for the Construction of Buildings of the American Institute of Architects. Article 20 thereof is a guaranty clause which states:

Neither the final certificate nor payment nor any provision of the Contract Documents shall relieve the Contractor of *responsibility for faulty materials or workmanship* and, unless otherwise specified, he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom, which shall appear *within a period of one year* from the date of substantial completion. The Owner shall give notice of observed defects with reasonable promptness. All questions arising under this article shall be decided by the Architect subject to arbitration. (Italics ours.)

Upon completion of the building and acceptance by defendants' architect, numerous defects were found to exist. Final payment was withheld pending correction. Plaintiffs filed a lien for the balance due and commenced suit against defendants seeking payment for the sums withheld. Defendants counterclaimed for damages for breach of contract.

Prior to trial the parties entered into a stipulation for dismissal, which provided:

(1) The action would be dismissed with prejudice;

(2) Plaintiffs would do all things necessary to correct the defective conditions existing at the date of the stipulation *that would normally be corrected under the one-year guaranty of the contract*;

(3) The Wienirs [defendants] would pay the promissory notes which they had delivered to Teufels [plaintiffs] and waive any defenses thereto.

Thereafter plaintiffs and some of the subcontractors attempted to repair and correct existing defects which would normally be corrected under the one-year guaranty referred to in the stipulation. No attempt was made to correct the leaking curtain wall. Plaintiffs' demand for payment of the promissory notes was refused; hence plaintiffs commenced this action in which defendants defend on the basis that the leaking curtain wall was a defective condition that would normally be corrected under the terms of the one-year guaranty. They ask for damages for the curtain wall and for other uncompleted work.

The trial court awarded plaintiffs a $28,900 judgment with interest on the two promissory notes plus $2,000 attorney fees. It awarded defendants a $3,300 setoff for plaintiffs' breach of the stipulation for failing to correct certain other defects in the building.

The focal point of this appeal is the trial court's finding that:

> By the terms of the specifications, the owner undertook to look to the curtain wall subcontractor for the guarantee against leaks rather than to the prime contractor and the correction of the leaks in the curtain walls was not a defective condition that would normally be corrected under the one-year guarantee by the prime contractor. The curtain wall contractor had been released from liability by the stipulation and judgment in the previous case.

Defendants do not contend that the scope of plaintiffs' obligation under the guaranty was expanded by the stipulation. The issue is construction of the guaranty clause contained in Article 20, quoted *supra*. We note that it is limited to "faulty materials or workmanship."

The defect in the curtain wall was not due to faulty materials or workmanship. The defect was a design, not a construction defect. This is not a case of an isolated Teclar Projected Casement Series No. 1400 curtain wall being defective. The specified trade name, type and series of curtain wall was inadequate for the purpose intended; any properly constructed No. 1400 curtain wall would have presented the same problem. The trial judge said in his oral opinion:

> It is too light a wall to serve the purpose . . . that is not a question that the contractor had any control over. That was what was specified and that is what they put in
> . . . .

In the final analysis, the rationale of *Clark v. Fowler*, 58 Wn.2d 435, 363 P.2d 812 (1961), is dispositive of this facet of the appeal. In *Clark* the contractor installed a furnace and heating system (designated by trade name and capacity) in accordance with the plans and specifications prepared by the owner's architect. The furnace did not heat

the house to the standard required in the specifications. This court said:

> If the furnace met the specifications of the respondents' architect and was installed according to respondents' plans and contract, but failed to function properly because of the improper design (approved by respondents' architect) of ducts, outlets, and cold air returns, the findings of fact do not support a conclusion of legal liability on the part of the appellant contractor. The architect was the agent of the respondents. *When the architect approved the design and the contractor installed the furnace in conformity with it, the contractor's obligation to the respondents under the contract, in this respect, was fulfilled.* (Italics ours.)

■ We thus hold that if an item is installed in accordance with the specifications of a *standard* American Institute of Architects' guaranty, the contractor is not liable if the item's failure to function properly is due to its design being improper for the intended use.

It is at least the standard guaranty provision of the specifications here involved that distinguishes the instant case from *Shopping Center Management Co. v. Rupp,* 54 Wn.2d 624, 343 P.2d 877 (1959), and *Port of Seattle v. Puget Sound Sheet Metal Works,* 124 Wash. 10, 213 Pac. 467 (1923), upon which defendants rely. In *Shopping Center* and *Port of Seattle,* the guaranty provisions of the contracts were broader than the standard guaranty of the instant case; in those cases the prime contractor actually guaranteed the satisfactory operation of all materials installed. The *Port of Seattle* case amply points out the difference between the two types of guarantys.

■ The promissory notes upon which this action is based provide that if suit is instituted to collect all or any portion of them, the makers will pay "such additional sum as the court may adjudge reasonable as attorney's fees in such suit." Since plaintiffs did not introduce evidence of a reasonable fee, defendants contend that the court erred when it allowed a $2,000 fee. Defendants' contention is not supported by our prior decisions.

In *Lee v. Willman,* 131 Wash. 279, 281, 230 Pac. 148 (1924), this court said:

Lastly, the appellants contend that the court erred in the allowance of an attorney's fee for foreclosing the lien. This contention has its foundation in the fact that no evidence was tendered as to what constituted a reasonable fee. But evidence was not necessary. It was competent for the trial court from its own knowledge of the value of such services to fix the amount of the fee. *Warnock v. Itawis,* 38 Wash. 144, 80 Pac. 297; *Littell v. Saulsberry,* 40 Wash. 550, 82 Pac. 909; *Carr v. Bonthius,* 79 Wash. 282, 140 Pac. 339; *Allen v. Allen,* 96 Wash. 689, 165 Pac. 889.

The trial court permitted one of the plaintiffs to testify in narrative form. Defendants contend that the testimony was inappropriate, inflammatory and prejudicial. Defense counsel's continuing objection was noted and overruled. The statements made without question and answer were heard by an experienced trial judge who is presumed not to be influenced by matters which were hearsay or otherwise inadmissible and to be able to discriminate between the relevant and the irrelevant. The trial judge did not abuse his discretion.

The judgment is affirmed.

ROSELLINI, C. J., HUNTER and HALE, JJ., and BARNETT, J. Pro Tem., concur.