**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| KING COUNTY,<br>     Respondent,<br><br>   v.<br><br>WALSH CONSTRUCTION COMPANY II,<br>LLC, an Illinois limited liability company;<br>and TRAVELERS CASUALTY AND<br>SURETY COMPANY OF AMERICA, a<br>foreign insurance corporation,<br><br>     Appellants. | No. 83787-7-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

FELDMAN, J. — This appeal arises out of a public works contract that required Walsh Construction Company II to construct and install a conveyance pipeline for King County. After the pipeline broke, the County paid Walsh to repair it and then sued Walsh for those costs. Relevant here, the trial court dismissed with prejudice "[a]ny defense based on alleged defective design." Because the trial court misinterpreted the pertinent provisions of the parties' agreement and misapplied controlling precedent, we reverse and remand.

**I.**

In November 2013, the County solicited bids to construct the South Magnolia Combined Sewer Overflow Control Project. The purpose of the project

No. 83787-7-I/2

was to diverge and limit the discharge of overflow wastewater into Elliott Bay during significant storm events. After Walsh submitted the lowest bid, the County awarded Walsh a contract (hereinafter "the Contract") for the construction of an underground pipeline to convey overflow wastewater toward a diversion structure and storage tank. Walsh signed the Contract on April 7, 2014.

The Contract includes a provision entitled "Correction of Work or Damaged Property," which states as follows:

> If material, equipment, workmanship, or Work proposed for, or incorporated into the Work, does not meet the Contract requirements or fails to perform satisfactorily, the County shall have the right to reject such Work by giving the Contractor written Notice that such Work is either defective or non-conforming.
>
> 1. The County, at its option, shall require the Contractor, within a designated time period as set forth by the County, to either
>    a. Promptly repair, replace or correct all Work not performed in accordance with the Contract at no cost to the County; or
>    b. Provide a suitable corrective action plan at no cost to the County.

The Contract defines the term "Work," listed above, to include "the labor, materials, equipment, supplies, services, other items, and requirements of the Contract necessary for the execution, completion and performance of all work within the Contract by the Contractor to the satisfaction of King County."

Although Walsh agreed that it would repair, replace, or correct all Work not performed in accordance with the Contract at no cost to the County if the material, equipment, workmanship, or Work failed to perform satisfactorily, it was not responsible for the design of the pipeline. Addressing that issue, section 3.2 of the General Terms and Conditions states that the "Contractor will not be

- 2 -

No. 83787-7-I/3

required to provide professional services which constitute the practice of architecture and engineering except to the extent provided for in the technical specifications and drawings."

Walsh began installing the pipeline in September 2014. On January 5, 2016, the County issued a Certificate of Substantial Completion. In September 2016, the County discovered that the pipeline was malfunctioning. Following investigation, the County determined the pipeline had fractured, allowing soil and other debris into the pipe. On February 8, 2017, the County notified Walsh that the break in the pipeline was preventing overflows from flowing through the pipeline to the new storage facility and that the "Work has been found not to conform to [sic] Contract."

Having found that the Work did not conform to the Contract, the County directed Walsh to develop a corrective action plan and submit the plan to the County as soon as possible. Walsh responded, contrary to the County's assertion, that "the root cause of the break is due to a design issue" and refused to repair the non-functioning pipeline unless the County paid it to do so. To expedite the repairs, the County agreed to advance funds to Walsh subject to mutual reservations of rights under which the County could seek reimbursement from Walsh. Walsh ultimately provided a corrective action plan and performed the work to replace the broken pipeline with a new pipeline. The County incurred costs in excess of $20 million to repair and replace the damaged pipeline.

In September 2020, the County sued Walsh alleging breach of contract and breach of warranty. The County alleged that the "Work failed to perform

satisfactorily due to the physical and other damage to the Project and to the Conveyance Pipe" and "Walsh breached the Construction Contract by not repairing, replacing or correcting the physically damaged Work that failed to perform satisfactorily at no cost to King County." Walsh, in turn, denied liability and asserted as an affirmative defense (among other defenses) that the County's "claims are limited or barred by the application of the *Spearin* doctrine."

The U.S. Supreme Court recognized the *Spearin* doctrine in *United States v. Spearin*, 248 U.S. 132, 54 Ct.Cl. 187, 39 S. Ct. 59 (1918). Succinctly stated, the doctrine holds that where "'[A] contractor is required to build in accordance with plans and specifications furnished by the owner, the [owner] impliedly guarantees that the plans are workable and sufficient.'" *Lake Hills Investments, LLC v. Rushforth Construction Co., Inc*. 198 Wn.2d 209, 218, 494 P.3d 410 (2021) (quoting *Ericksen v. Edmonds School Dist. No. 15*, 13 Wn.2d 398, 408, 125 P.2d 275 (1942)). The *Spearin* doctrine "has [since] been adopted in nearly all jurisdictions," including Washington. *Id.* (internal quotation marks omitted).

The County filed a motion for summary judgment seeking (among other relief) dismissal of Walsh's *Spearin* defense. The County asserted that any implied warranty of design adequacy was displaced by the Correction of Work or Damaged Property provision in the Contract. The trial court granted the County's motion and dismissed with prejudice "[a]ny defense based on alleged defective design." Walsh moved for reconsideration, which the trial court denied. The court subsequently granted Walsh's motion to certify the summary judgment

No. 83787-7-I/5

ruling for discretionary review under RAP 2.3(b). This court granted Walsh's motion for discretionary review.

## II.

The question presented here is whether the Correction of Work or Damaged Property provision in the Contract (quoted above) displaces "[a]ny defense based on alleged defective design," including Walsh's *Spearin* defense, as the trial court ruled. Our Supreme Court squarely addressed a similar issue in *Shopping Center Management Company v. Rupp*, 54 Wn.2d 624, 343 P.2d 877 (1959) (hereinafter *Rupp*), which the County cites in support of its argument. The court there held that "in the absence of an express warranty, a contractor is not liable for the loss or damage resulting from the defective plans and specifications prepared by the other party to the contract." *Id.* at 631. The court explained that where the language of an express warranty goes beyond warranting the work and also warrants that the materials and equipment installed by the contractor will "operate satisfactorily under the plans and specifications of the owner," the contractor's express warranty of satisfactory operation displaces the owner's implied warranty of design adequacy. *Id*. at 632-33.

In so holding, the court in *Rupp* compared the express warranty at issue there to the contractual guarantee in *Port of Seattle v. Puget Sound Sheet Metal Works*, 124 Wash. 10, 213 P. 467 (1923). In *Port of Seattle*, the contractor's guarantee stated: "We hereby guarantee to keep the roof installed by us . . . in perfect condition for a term of ten years from this date." *Id.* at 11. Given this broad language, the court in *Port of Seattle* held that the contractor was "bound

- 5 -

by the . . . guaranty, and must maintain and keep in repair the work, no matter whether the imperfect condition arose from his failure to comply with the plans and specifications or may have arisen by reason of a defect in the very plan of construction itself, independent of any other cause." *Id.* at 13.

Applying this central holding of *Port of Seattle* to the facts at issue in *Rupp*, the court in *Rupp* held that Rupp's express warranty was "as broad as that in the *Port of Seattle* case" because Rupp had agreed "to do more than merely repair or replace any defective material, equipment, or workmanship," it had also agreed to "guarantee the *satisfactory operation* of all materials and equipment installed *under this contract*," which the court in *Rupp* expressly held "includes the plans and specifications." 54 Wn.2d at 632. Emphasizing this point, the court held: "Therefore, [Rupp] must be deemed to have guaranteed that the materials and equipment installed by him would operate satisfactorily *under the plans and specifications of the owner*." *Id*. at 632-33 (emphasis added).

Here, in contrast to *Rupp*, Walsh did not agree that the materials and equipment "would operate satisfactorily under the plans and specifications of the owner." *Id*. To the contrary, section 3.2 of the General Terms and Conditions states that the "Contractor will not be required to provide professional services which constitute the practice of architecture and engineering except to the extent provided for in the technical specifications and drawings." Nor did Walsh agree to maintain the pipeline in perfect condition for a specified period of time (as the contractor did in *Port of Seattle*). As a result, this case does not involve the sort of "'wider guaranty'" that would necessarily displace the implied warranty of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

design adequacy under *Rupp*. 54 Wn.2d 632 (quoting *Port of Seattle*, 124 Wash. at 13).

Several principles of contract construction support our conclusion. First, "[o]ur goal is to interpret the agreement in a manner that gives effect to all the contract's provisions" and "harmonize clauses that seem to conflict." *Nishikawa v. U.S. Eagle High, LLC.,* 138 Wn. App. 841, 849, 158 P.3d 1265 (2007). The Correction of Work or Damaged Property provision allows the County to reject the Work by giving Walsh notice that the Work "is either *defective* or *nonconforming*" and require Walsh to "[p]romptly repair, replace or correct all Work *not performed in accordance with the Contract.*" (emphasis added). And section 3.2 of the General Terms and Conditions, as noted previously, relieves Walsh of the requirement to verify the adequacy of the plans and specifications as an architect or engineer presumably would. These provisions reinforce our conclusion that the Correction of Work or Damaged Property provision does not guarantee that the pipeline will operate satisfactorily under the County's plans and specifications as required to displace the implied warranty of design adequacy under *Rupp.*

Second, "courts must avoid construing contracts in a way that leads to absurd results." *Grant County Port Dist. No. 9 v. Wash. Tire Corp*., 187 Wn. App. 222, 236, 349 P.3d 889 (2015). The Contract includes a "Warranty and Guaranty" provision, which warrants that "all Work conforms to the requirements of the Contract and is free from any defect in equipment, material, design, or workmanship performed by Contractor" and limits the warranty period to "the

longer period of . . . one year from the date of Substantial Completion of the entire Project or the duration of any special extended warranty offered by a supplier or common to the trade." The County initially gave notice under this provision. But if the County's interpretation of the Correction of Work or Damaged Property provision were accepted, this express warranty and its one-year limitation period would be meaningless because Walsh would be deemed to have guaranteed that the pipeline will operate satisfactorily and that it will provide any repairs or corrective action plan at no cost to the County regardless of what or who caused the pipeline to fail and regardless of when that occurs. For example, if the County's construction activities above the pipeline caused the pipeline to fail, if the equipment was improperly maintained by the County, or if the County's design was inadequate or defective, the County's interpretation would allow it to demand repairs or a corrective action at no cost to the County without regard to the one-year limitation period in the "Warranty and Guaranty" provision, in the absence of any non-conforming work, and despite its agreement that Walsh was not required to provide architectural or engineering services on the project. Such an absurd interpretation should be avoided.

Lastly, "where a contract is susceptible of more than one construction, this court should construe it against the drafter." *Joinette v. Local 20, Hotel & Motel Rest. Emps. & Bartenders Union*, 106 Wn.2d 355, 364, 722 P.2d 83 (1986). If and to the extent the Correction of Work or Damaged Property provision is susceptible of more than one construction, it should properly be interpreted to mean that the Work will conform to the Contract and that the distinct items

No. 83787-7-I/9

incorporated into the Work will perform satisfactorily (in other words, that a fusible polyvinyl chloride pipe installed under the Contract will perform as a fusible polyvinyl chloride pipe reasonably should) and not that the pipeline will operate satisfactorily under the plans and specifications as required to displace the implied warranty of design adequacy under *Rupp.*

Contrary to the County's argument, *Lake Hills* does not require a different result. In *Lake Hills*, the Supreme Court stated that to successfully assert a *Spearin* defense "the contractor must establish that . . . its obligations went no further than to conform with the plans and specifications prescribed by the owner as part of the contract. . . ." 198 Wn.2d at 218. Here, with regard to the performance of the conveyance pipeline—as opposed to the distinct items incorporated into the Work—Walsh's obligations went no further than to conform with the plans and specifications prescribed by the County as part of the Contract. The County's reliance on the foregoing portion of *Lake Hills* is therefore misplaced.

Indeed, elsewhere in its opinion, the Supreme Court expressly reiterated in *Lake Hills* that "[i]f the owner provides a defective design, then the contractor should not be responsible for the damage caused by following the design because [they were] not the source of the defects." 198 Wn.2d at 224. Here, for example, Walsh's expert opined that the design provided by King County was defective. Consistent with *Lake Hills*, Walsh should not be responsible for damage caused by following the design because it was not the source of any alleged defect. Instead, Walsh is liable if its Work does not meet the Contract

No. 83787-7-I/10

requirements or if the distinct items incorporated into the Work fail to perform satisfactorily.

### III.

The trial court erred in dismissing with prejudice "[a]ny defense based on alleged defective design."  We reverse and remand for further proceedings consistent with this opinion.

Feldman, J.

WE CONCUR:

Birk, J.                    Mann, J.