IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| C 1031 PROPERTIES, INC., a Washington Corporation, | ) ) ) | No. 30849-9-III |
| Petitioner, | ) ) ) | |
| v. | ) ) | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, a Corporation, | ) ) ) | PUBLISHED OPINION |
| Respondent. | ) ) | |

BROWN, J. — Today, we discretionarily review the trial court's summary judgment ruling denying outright liability and damages to C 1031 Properties Inc. in its suit against First American Title Insurance Company for a recorded electricity easement First American concedes it missed. C 1031 contends the trial court erred in failing to interpret and reject the title insurance contract's "knowledge" exclusion on facts showing it saw power lines on the property before closing without reporting the lines to First American. First American agrees the trial court should have summarily resolved the knowledge exclusion, but contends C 1031 had the requisite knowledge to invoke the knowledge exclusion. We hold C 1031 did not have the requisite "knowledge" of the recorded easement and reverse the trial court's ruling that left this issue to the trier of fact. We affirm the trial court's damages decision because material facts remain

outstanding. Thus, we do not reach liability related evidentiary issues. We decline in this interlocutory review to intervene in the trial court's pretrial discovery rulings. Finally, we leave C 1031's attorney fee request for fees incurred at trial for the trial court decision on remand, along with fees as the partly prevailing party here. Accordingly, we remand for proceedings consistent with this opinion.

## FACTS

On August 3, 2007, Harlan Douglass, an agent of C 1031 and experienced developer, agreed to purchase property in Spokane where an old drive-in theater was located to construct storage units. The agreement required C 1031 to inspect the subject property. Mr. Douglass, on behalf of C 1031, initialed page 2 of the purchase and sale agreement, acknowledging he had sufficient time to inspect the property and approve the boundary line location and the physical conditions, including "electrical." Clerk's Papers (CP) at 287.

On August 10, 2007, First American issued a preliminary commitment of title insurance to C 1031. This document contained a notice provision requiring C 1031 to notify First American of existing encumbrances that were not shown in Schedule B of the preliminary commitment but known to C 1031. C 1031 did not notify First American about the existence of the power line and power poles on the property.

Before entering the purchase agreement, C 1031 hired Whipple Consulting Engineers Inc. (Whipple Consulting) to prepare a complete set of plans for the property, including a survey. This survey identified the power lines and power poles. C 1031

2

approved these plans and, in September 2007, submitted them to the City of Spokane Valley for permits.

In October 2007, the purchase and sale transaction closed and First American issued a title insurance policy. The policy states "easements of record are covered." CP at 88. Conversely, the policy specifically excludes from coverage "easements . . . which are not shown by the public record." CP at 92.

After closing, C 1031 contacted the power company, Avista,[1] to remove the lines. C 1031 then learned for the first time an easement was recorded with the Spokane County Auditor in 1949, granting Avista the right to erect and maintain "an electrical transmission and telephone system attached to the transmission line poles" across the subject property. CP at 543. Avista indicated it would bury the power lines at a cost of $5,489.96 each for the three offending poles.

On March 31, 2009, C 1031 sued First American for breach of title insurance coverage. On cross motions for summary judgment, the court ruled First American's conceded omission was covered under the policy, but the court found that material questions of fact still existed regarding:

- actual monetary loss or damage sustained or incurred by the plaintiff;
- whether or not plaintiff had, or should have had, actual knowledge of recorded easements;
- whether or not actual and/or knowledge that should have been known by the plaintiff would mitigate and/or bar damages.

---

[1] The easement was originally granted to Avista's predecessor, Washington Water Power Company.

CP at 838. C 1031 submitted an expert's affidavit specifying damages of $60,000 based on a property value measure of damages. C 1031 did not mention Avista's offer to bury the power lines. First American did not controvert the expert's affidavit.

During trial preparation, C 1031 sought to include the testimony of Irving Paul, an attorney who frequently litigates title insurance cases, to address whether C 1031's knowledge of the power lines would mitigate their damages. The court excluded this evidence. C 1031 asked First American to produce certain documents, including First American's entire file prepared by underwriting, manuals detailing practices and procedures, all claims made within the last three years to the Spokane and Seattle offices, and advertising. The court partly denied C 1031's motion to compel discovery, ordering First American to solely produce documents relating to its assessment of damages. After C 1031 requested discretionary review and First American joined in their request, the trial court certified the matter for this court's discretionary review.

## ANALYSIS

### A. Knowledge Exception to Liability

The issue is whether the trial court erred when denying summary judgment in not interpreting as a matter of law the meaning of the knowledge exception and applying that interpretation to the agreed material facts. C 1031 contends the issue of knowledge should not go to a trier of fact but be decided by this court. First American agrees the knowledge issue should be decided by the court, but contends it was not liable for a known easement under the case facts.

4

We review an order granting or denying summary judgment de novo, engaging in the same inquiry as the body that decided it. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). Summary judgment is appropriate when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. CR 56(c). The interpretation of insurance policy language is a question of law, reviewed de novo. *Butzberqer v. Foster*, 151 Wn.2d 396, 401, 89 P.3d 689 (2004).

The role of the title insurer is to insure title. *Kim v. Lee*, 145 Wn.2d 79, 91, 31 P.3d 665 (2001). "Title insurance is a guaranty of the accuracy of a company search and record title on a specific property." *Kiniski v. Archway Motel*, 21 Wn. App. 555, 560, 586 P.2d 502 (1978). By paying consideration to a title insurer for their expert services in uncovering defects in title, it is reasonable for the insured to believe and rely upon the fact that the insurer has discovered any encumbrances recorded in the public record. *Kim*, 145 Wn.2d at 91-92.

First American admits it missed the easement recorded by Avista's predecessor. C 1031's policy states that "easements of record are covered." CP at 88. The remaining dispute, then, is whether an exception or exclusion within the title insurance policy limits coverage for C 1031. Knowledge is defined in the policy as "[a]ctual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting Title." CP at 88.

5

When First American denied C 1031's claim it stated it was doing so because, "there . . . appears to be no loss of value due to the [Avista] easement, there does not appear to be a compensable claim under the terms of the policy. The claim tendered is therefore denied." CP at 135-36. Focusing on the first part of the denial, C 1031 argues we should not reach the knowledge exclusion issue, but we conclude from the briefing and arguments that the knowledge issue was squarely before the trial court, but overlooked or misinterpreted. Alternatively, C 1031 argues "knowledge" of a recorded easement does not include seeing power lines on the property because power lines like other encroachments can and do often exist without legal justification, thus, it lacked actual knowledge of Avista's easement.

Like the trial court, in reviewing a summary judgment our duty is to interpret the policy exclusion language and apply that interpretation to the undisputed case facts. First American argues "knowledge" means or includes notice of Avista's easement imputed to C 1031 because C 1031 saw power lines on the property. But the policy definition unambiguously defines knowledge as "actual knowledge" of an easement, not "constructive knowledge or notice that may be imputed [to C 1031]" constructively. CP at 88. When C 1031 saw the power lines on the property, it acquired at best inquiry notice, not actual knowledge of a recorded easement. Thus, First American's argument fails. Therefore, the trial court erred in leaving this issue to the trier of fact.

## B. Damages

The issue is whether the trial court erred in not granting damages as requested by C 1031 at summary judgment based on its expert's uncontroverted affidavit.

C 1031 sued for breach of contract against First American. "A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995) (citing *Larson v. Union Inv. & Loan Co.*, 168 Wash. 5, 10 P.2d 557 (1932)). A greater degree of certainty is required to prove the *fact* of damages than the *amount* of damages: once it is reasonably certain that the breach caused damages, the fact finder may determine the amount of the damage award by drawing reasonable inferences from reasonably convincing evidence. *Gaasland Co., Inc. v. Hyak Lumber & Millwork, Inc.*, 42 Wn.2d 705, 713-14, 257 P.2d 784 (1953). In other words, damages are questions of fact left for the jury to decide unless reasonable minds could not differ. *Womack v. Von Rardon*, 133 Wn. App. 254, 263, 135 P.3d 542 (2006).

Based on this record showing widely divergent measures of damage and First American's lack of opportunity to defend title or reach an accommodation with the power company to bury the power lines, we leave the fact finding and decisions on the proper measure of damages to the trial court. We cannot conclude reasonable minds would not differ regarding the assessment of damages. Given all, we conclude the trial court did not err in allowing the damages issues to go to trial.

## C. Attorney Fees

C 1031 requests attorney fees on appeal and at the trial level based on the insurance policy, RCW 4.84.330, *CHD, Inc. v. Boyles*, 138 Wn. App. 131, 157 P.3d 415 (2007), *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), and RAP 18.1. C 1031 partly prevails here on liability, and is entitled to attorney fees under RAP 18.1. Considering further proceedings are required at the trial court, we leave to the lower court to decide the appellate fee and whether C 1031 is entitled to attorney fees under *Olympic Steamship Co.* It is noted, however, that in *Colorado Structures, Inc. v. Insurance Co. of the West*, 161 Wn.2d 577, 606-07, 167 P.3d 1125 (2007), our Supreme Court held that *Olympic Steamship* applies when an insurer contests the meaning of a contract, "but not when it contests other questions as, for example, its liability in tort or the amount of damages it should pay" (quoting *Colorado Structures, Inc. v. Insurance Co. of the West*, 125 Wn. App. 907, 928, 106 P.3d 815 (2005)).

Affirmed in part. Reversed in part.

Brown, J.

WE CONCUR:

Korsmo, C.J.

Kulik, J.

8