# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| IRON GATE PARTNERS 5, L.L.C., | No. 47749-1-II |
| Appellant, | |
| v. | |
| TAPIO CONSTRUCTION, INC., | UNPUBLISHED OPINION |
| Respondent, | |
| R.T. WHARTON & ASSOCIATES, INC., A&A CONTRACTING, INC., | |
| Defendants. | |

JOHANSON, J. — Iron Gate Partners 5 LLC (Iron Gate) appeals the jury's defense verdict and award of attorney fees in Iron Gate's breach of contract action against Tapio Construction Inc. (Tapio). We reject Iron Gate's argument that the performance guaranty made Tapio strictly liable for water intrusion into the facility. Therefore, we hold that the trial court did not err when it denied Iron Gate's summary judgment motion, the motion in limine, and the CR 50 motions. However, based on the plain language of the contract and its execution context, we hold that the trial court erred when it awarded Tapio its attorney fees.

We affirm the trial court's denial of Iron Gate's summary judgment motion, motion in limine, and CR 50 motions and reverse the trial court's attorney fee award to Tapio.

FACTS

I. BACKGROUND

A. CONSTRUCTION OF THE FACILITY

In 2006, Iron Gate contracted with Tapio, R.T. Wharton & Associates Inc. (Wharton), Kiwi Storage Systems (Kiwi),[1] and others to design and build a 481-unit self-storage facility (the Facility) in Vancouver. Although Tapio holds a general contractor's license, Tapio functioned as one of multiple contractors on the project. A master contract (the Contract), drafted by Iron Gate, governed Tapio's work. Iron Gate entered into substantially the same contract with the other contractors.

The Facility's construction was completed in July 2007. The Facility included two parallel, two-story buildings, separated by an earthen berm. Atop the berm was a driveway aisle allowing second-story access to storage units. First-story access was available from the buildings' outer sides at ground level. A few months after the facility's completion, Iron Gate employees noticed standing water in the first-floor units.

---

[1] A Tapio owner testified that Wharton, a structural engineer, designed the Facility and Kiwi built the Facility's metal portions.

B. Contract Terms

Section 15 of the Contract included, relevant to this appeal, the following performance guaranty:

> Contractor warrants and guarantees to Owner . . . the satisfactory performance of the Work for a period of one (1) year from . . . the date of Completion. . . . Contractor agrees to repair or replace any or all Work, together with any other adjacent work, which may be displaced by so doing, to Owner's satisfaction, that . . . fails to perform for one (1) year from the date of Completion.

Clerk's Papers (CP) at 55. "Addendum A" to the Contract defined "Work" as discrete tasks, including as item 1.3 a "[r]etaining wall package to include"

> [l]abor and materials to form concrete footings and walls. Furnish and install rebar package. Concrete pumping, concrete, place and finish. Furnish and install ecoline-r liquid applied membrane waterproofing and "**miradrain system**" with perforated drain pipe on building "A & B" retaining walls before back filling.

CP at 57. The "Work" also included providing erosion control, a grading and excavation package, an underground utilities package, a building foundation package, concrete paving, and city street improvements. The "[b]uilding foundation package," item 1.5, included furnishing and installing a "rebar package for cast in place concrete" and concrete on the second-floor deck. CP at 57.

Regarding attorney fees, the Contract provided that "[i]n the event of litigation between the parties hereto . . . on account of the breach of or to enforce or interpret . . . the Contract . . ., the losing party shall pay all costs and reasonable attorney[] fees *actually incurred* by the prevailing party, including those on appeal." CP at 55 (emphasis added).

## II. BREACH OF CONTRACT ACTION

### A. IRON GATE'S SUMMARY JUDGMENT MOTION

In April 2011, Iron Gate sued Tapio for breach of contract.[2]  Arguing that Tapio had breached the performance guaranty in section 15 of the Contract, Iron Gate moved for summary judgment.  Iron Gate contended that because the performance guaranty's language was unambiguous and Tapio had breached the guaranty, summary judgment was appropriate.  Iron Gate argued that as a matter of law, water intrusion violated the performance guaranty, regardless of whether Tapio's work caused the intrusion or the water came through defects created by other parties.  Iron Gate claimed also that undisputed evidence revealed that Tapio had failed to properly install waterproofing components for the concrete retaining walls so that water intruded into the storage units.  Tapio responded that the performance guaranty was not breached if others' work caused the water intrusion and that there were genuine issues of material fact regarding whether the water intruded as a result of Tapio's work.

The trial court "appreciated [Iron Gate's] argument" that regardless of fault, Tapio was liable under the performance guaranty, but the trial court disagreed with Iron Gate based on the Contract's language.  1 Report of Proceedings (RP) at 38.  The trial court denied Iron Gate's summary judgment motion and ruled that summary judgment was inappropriate because it was unclear how the moisture had intruded into the storage units.

---

[2] Iron Gate sued both Tapio and Wharton, and Tapio subsequently brought third party claims against A&A Contracting Inc. (A&A), Tapio's subcontractor.  The trial court ultimately dismissed both Wharton and A&A.

## B. IRON GATE'S MOTION IN LIMINE

Before trial, Iron Gate moved to exclude evidence of the fault "of any other named or unnamed parties" except to support Tapio's failure to mitigate defense. CP at 661. Iron Gate argued that the performance guaranty made the fault of those other than Tapio irrelevant. In response, Tapio contended that Iron Gate had to prove that Tapio's alleged breach of warranty had caused water to get inside. The trial court denied[3] the motion in limine because there were "questions of causation and [whether] there [was] moisture getting through and what is causing it to get through." 2 RP (Apr. 4, 2014) at 68-69.

## C. JURY TRIAL

### 1. WATER INTRUSION EVIDENCE

Iron Gate's part-owner, Glen Aronson, testified that he noticed standing water, which he initially attributed to power washing, in the Facility's interior within four months of the July 2007 completion. An employee saw water intrusion in the first-floor units adjoining the berm beginning in the fall 2007. The water intruded mostly from the seam between the retaining wall and the floor and also from cracks in the retaining wall. In April 2009, the Facility's managers alerted Aronson that there was an "issue with water intrusion" into the lower level units. 2 RP (Apr. 15, 2014) at 283. During heavy rains, Aronson observed water streaming down the walls from cracks in the walls' middles, from tieback holes in the walls, and from the walls' top edges. The water intrusion slowed after Iron Gate employees caulked expansion joints between the second-floor units and the driveway.

---

[3] The record on appeal does not contain a written ruling.

Iron Gate's expert testified that he saw cracks in the concrete at the driveway aisle slab's edge on the second floor. Also, a structural expert observed floor-to-ceiling cracking on the first-floor units' walls adjoining the berm caused by under-reinforced steel and improper jointing.

Tim Yarnot, Tapio's senior project manager, testified that the company hired A&A to apply the retaining-wall waterproofing called for by the Contract. John Tapio, a Tapio owner, testified that the Contract did not require Tapio to caulk exterior cold joints on the second floor because Iron Gate thought that Tapio's price for that work was too high.

A construction defect investigator testified that water entered the first-floor units through the construction joint between the vertical retaining wall and the horizontal pan deck. The pan deck was metal framing that Kiwi, not Tapio, had constructed.

Michael Milakovich, Tapio's water intrusion expert, observed water entering between the rebar and retaining wall, as well as through retaining wall cracks. Milakovich sprayed water at the base of a second-floor unit's roll-up door and into the door jamb. In Milakovich's opinion, rainwater intruded into the second floor through the unweatherproofed unit door jambs, which were Kiwi's work, then migrated to the first floor. Water that intruded though the apron and driveway joint was able to "drop alongside the building" into the core drainage plane between the retaining wall drain mat and membrane. 7 RP at 779. Milakovich opined that he "[didn't] think the walls [were] a problem in this . . . situation." 8 RP at 853.

2.  IRON GATE'S CR 50 MOTIONS

Iron Gate moved for a directed verdict under CR 50(a) and (b). Iron Gate argued that the case involved only contract construction (determining the Contract terms' legal effect), which was an issue for the trial court. Iron Gate reasoned that because Tapio's work included all the concrete

work and because water came through the concrete, Tapio breached the performance guaranty. The trial court denied both CR 50 motions.

3.    JURY INSTRUCTIONS

The trial court instructed the jury that Iron Gate had to prove, among other things, that the Contract's terms included a "warranty and guaranty to Iron Gate that [Tapio's] Work would satisfactorily perform" for one year after completion, that Tapio had breached the Contract, and that Tapio's breach resulted in Iron Gate's damages.  CP at 1455.

4.    VERDICT AND ATTORNEY FEE AWARD

The jury returned a defense verdict, and the trial court awarded Tapio $125,000 in attorney fees as the prevailing party.  The trial court found that Tapio did "actually incur" attorney fees and costs and concluded that this was so regardless of its insurance carrier's involvement.  CP at 1377.

ANALYSIS

I. SUMMARY JUDGMENT DENIAL

Iron Gate's underlying argument is that as a matter of law, the trial court erred when it declined to adopt Iron Gate's broad reading of the guaranty provision.[4]  Iron Gate argues that the "iron-clad and strict" performance warranty "absolutely guarantee[d] against any water intrusion" so that as a matter of law, summary judgment for Iron Gate was appropriate.  Br. of Appellant at 1-2.  Iron Gate contends that the trial court erred when it denied Iron Gate's summary judgment

---

[4] For instance, Iron Gate argues that this case asks whether a "strict performance guarantee" is "construed as a matter of law," that "Iron Gate sought to enforce what it believed was a watertight guarantee," and that Tapio unconditionally promised "that no water would intrude the storage units."  Br. of Appellant at 1-2, 6.

motion because the undisputed fact that water intruded into the storage units established that Tapio breached the performance guaranty. We disagree.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

Where the trial court denies summary judgment due to a substantive legal issue, our standard of review is de novo. *Washburn v. City of Federal Way*, 169 Wn. App. 588, 609, 283 P.3d 567 (2012) (quoting *Univ. Vill. Ltd. Partners v. King County*, 106 Wn. App. 321, 324, 23 P.3d 1090 (2001)), *aff'd*, 178 Wn.2d 732, 310 P.3d 1275 (2013).

Contract interpretation is the process of ascertaining the parties' intention. *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). When the facts regarding the meaning of a contract provision are undisputed, interpretation is a matter of law. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 424 n.9, 191 P.3d 866 (2008).

Washington follows the "objective manifestation theory of contracts" under which we focus on the reasonable meaning of an agreement's words rather than the parties' unexpressed subjective intent. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst Commc'ns, Inc.*, 154 Wn.2d at 504. We view the contract as a whole and interpret particular language in context with other provisions. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). And following the "context" rule adopted by *Berg*, we consider the context of the contract's execution. *Viking Bank*, 183 Wn. App. at 713 (citing *Berg*, 115 Wn.2d at 666-69). However, extrinsic evidence regarding contract execution may be used only to determine the meaning of specific words and terms and not to show an intention independent of the instrument

or to vary, contradict, or modify the written word. *Hearst Commc'ns, Inc*, 154 Wn.2d at 503 (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695-96, 974 P.2d 836 (1999)).

### B. SUMMARY JUDGMENT INAPPROPRIATE

Iron Gate contends that the guaranty is so broad that water intrusion into the Facility, regardless of fault or cause, breached the Contract as a matter of law and that the Contract called for Tapio to "waterproof" the building. Br. of Appellant at 6.

We begin with the provisions at issue: the performance guaranty, in which Tapio "guarantee[d] . . . the satisfactory performance of the Work for a period of one (1) year" and the addendum defining "Work." CP at 55. "Work" comprised a series of discrete items, such as a retaining wall package, including concrete footings and walls and with membrane waterproofing and a MiraDRAIN system to be applied to the retaining walls. Another item was the building foundation package, including concrete for the second-floor deck. Notably, the only reference to waterproofing was to apply membrane waterproofing to the retaining walls.

The reasonable meaning of the performance guaranty belies Iron Gate's contention that any water intrusion into the Facility breached the Contract. No part of the guaranty provision or Addendum A promised that the entire Facility would be watertight or warranted against water intrusion into the storage units. Rather, under the provision's plain language, Tapio guaranteed only the satisfactory performance of the discrete items of "Work" listed in Addendum A. Part of that guaranty promised the satisfactory performance of a membrane waterproofing system on the retaining walls. But a guaranty that a waterproofing membrane to be applied to the retaining walls would satisfactorily perform does not amount to a promise that the entire facility will be watertight.

We hold that the ordinary, usual meaning of the performance guaranty unambiguously contradicts Iron Gate's assertion that Tapio agreed to provide an entirely watertight facility.

We look also to the context of the Contract's execution to determine whether the parties objectively intended that Tapio would guarantee the entire Facility against water intrusion. *See Hearst Commc'ns, Inc*, 154 Wn.2d at 503; *Viking Bank*, 183 Wn. App. at 713. Here, substantially the same contract was used with multiple contractors. Further, Tapio was not "the" general contractor, but was one of the multiple contractors, each hired to work on a portion of the project. And notably, the scope of work did not require Tapio to caulk exterior cold joints, a potential source of water intrusion.

The context in which the parties executed the Contract shows that Tapio was responsible for discrete portions of the project, not for overseeing the entire project, which supports our holding that Tapio was not required to guarantee that the entire Facility would be watertight. Given that the parties expressly agreed that Tapio was not to waterproof exterior cold joints, the context further implies that the Contract did not guarantee that every discrete item of Tapio's Work would be waterproof. For these reasons, we hold that both the language of the guaranty provision and the context in which the parties executed the Contract contradicts Iron Gate's assertion that any water intrusion into the Facility breached the guaranty provision as a matter of law.

Iron Gate relies upon *Shopping Center Management Co. v. Rupp*, 54 Wn.2d 624, 343 P.2d 877 (1959), and *Port of Seattle v. Puget Sound Sheet Metal Works*, 124 Wash. 10, 213 P. 467 (1923). But these cases, both decided before *Berg*'s objective intent test, do not support Iron Gate's position.

10

In both *Shopping Center Management Co.* and *Port of Seattle*, our Supreme Court considered whether the failure of work *specifically described and guaranteed* by the contract and caused by something other than the contractor's defective workmanship was covered by the relevant guaranty.[5]  54 Wn.2d at 625, 629, 633; 124 Wash. at 10-13.  Here, however, Tapio did not specifically describe and guarantee the entire Facility, but only discrete items listed in Addendum A to the Contract.  And Tapio's defense was that work other than the Work described in the Contract resulted in the water intrusion.

For these reasons, Iron Gate's argument that as a matter of law, water intrusion into the Facility breached the performance guaranty fails, and we reject Iron Gate's argument that the trial court should have granted summary judgment in Iron Gate's favor.  Because the performance guaranty is not as broad as Iron Gate contends, Tapio appropriately argued for denial of Iron Gate's summary judgment motion on the basis that Tapio disputed the water intrusion's source.  The trial court properly denied the summary judgment motion based on these disputed facts' existence.  Thus, we affirm the trial court's order denying summary judgment to Iron Gate.

## II.  MOTION IN LIMINE'S DENIAL

In a related argument, Iron Gate contends that the trial court erred when it denied Iron Gate's motion in limine to exclude evidence of others' fault.  In particular, Iron Gate argues that the mere fact that Tapio's Work did not satisfactorily perform meant that Tapio was liable under

---

[5] In both cases, the described work's failure breached the performance guaranty regardless of the reason that the work failed to satisfactorily operate.  *Shopping Ctr. Mgmt. Co.*, 54 Wn.2d at 633; *Port of Seattle*, 124 Wash. at 13, 19.

the performance guaranty, regardless of whether others' work was also defective or unsatisfactory. We reject Iron Gate's argument.

We review evidentiary rulings, such as denial of a motion in limine, for abuse of discretion. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 728, 315 P.3d 1143 (2013). A trial court abuses its discretion if its decision was manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Gregg Roofing*, 178 Wn. App. at 728. To prevail on a breach of contract claim, the party claiming breach must establish that the contract imposed a duty, the duty was breached, and the breach proximately caused the damages. *C 1031 Props., Inc. v. First Am. Title Ins. Co.*, 175 Wn. App. 27, 33-34, 301 P.3d 500 (2013) (quoting *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995)).

Here, Iron Gate filed a motion in limine that sought to exclude evidence of third party fault except as evidence of failure to mitigate and claimed that the performance guaranty was so broad that the fault of others was irrelevant. The trial court denied the motion in limine because there were "questions of causation and [whether] there [was] moisture getting through and what is causing it to get through." 2 RP (Apr. 4, 2014) at 68-69.

As discussed, Iron Gate is incorrect that water's mere presence in the Facility breached the performance guaranty. Because the guaranty was not as broad as Iron Gate asserts, Tapio could defend by establishing that nonperformance of its Work had not caused the water intrusion.[6] *See C 1031 Props.*, 175 Wn. App. at 33-34. Because evidence of others' fault was relevant to whether

---

[6] The jury instructions reflected the causation element: they stated that Iron Gate had to prove that Iron Gate was damaged "as a result of Tapio's breach." CP at 1455. And it was an affirmative defense for Tapio to prove that the damages were due to the fault of parties other than Tapio.

12

Tapio's alleged breach resulted in the water intrusion, the trial court had tenable grounds and reasons to deny Iron Gate's motion in limine. Accordingly, we affirm the motion's denial.

### III. CR 50 MOTIONS' DENIAL

For similar reasons that Iron Gate contends the trial court erred when it denied the summary judgment motion, Iron Gate contends that the trial court erred when it denied Iron Gate's CR 50 motions for a directed verdict. We hold that Iron Gate's arguments in this regard fail.

We review de novo a CR 50 motion's denial. *Paetsch v. Spokane Dermatology Clinic, P.S.*, 182 Wn.2d 842, 848, 348 P.3d 389 (2015). A CR 50 motion should be granted only when, viewing the evidence in the light most favorable to the nonmoving party, there is no competent and substantial evidence that supports the verdict. *Paetsch*, 182 Wn.2d at 848 (quoting *Indus. Indem. Co. of Nw. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520 (1990)).

Here, as discussed, the guaranty provision's plain language contradicts Iron Gate's assertion that Tapio guaranteed the Facility would be "watertight." Br. of Appellant at 7. At the end of Iron Gate's case-in-chief, the jury had competent and substantial evidence to find that the fact of water's presence in the berm units alone did not breach the guaranty provision and thus did not support a verdict for Iron Gate. Accordingly, the trial court did not err when it denied Iron Gate's first CR 50(a) motion.

Additionally, Tapio provided competent and substantial evidence from which the jury could find that Tapio's Work did not cause the water to intrude. For example, a Tapio expert testified that water entered the berm units through the construction joint between the vertical first-floor retaining wall and the horizontal pan deck; the pan deck was part of Kiwi's, not Tapio's, work. And another Tapio expert opined that the walls were not the "problem" causing water

13

intrusion. 8 RP at 853. Because there was competent and substantial evidence to support the verdict for Tapio, the trial court did not err at the trial's conclusion when it denied Iron Gate's second CR 50(a) motion. We disagree with Iron Gate that the trial court erred when it denied Iron Gate's CR 50 motions.

## IV. TRIAL COURT'S ATTORNEY FEE AWARD

Iron Gate argues that because Tapio's insurance carrier, not Tapio, incurred attorney fees, the trial court improperly awarded Tapio its attorney fees "'actually' incurred" under the Contract. Br. of Appellant at 25. Tapio responds that it is immaterial whether it was represented by insurance defense counsel because our courts consistently award attorney fees to prevailing parties represented by insurance counsel.[7] We agree with Iron Gate.

Attorney fees may be awarded only if authorized by contract, statute, or recognized equitable ground. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 783, 275 P.3d 339 (2012). We review de novo whether a contractual provision authorizes an attorney fee award. *Renfro v. Kaur*, 156 Wn. App. 655, 667, 235 P.3d 800 (2010). When we interpret a contract, we discern the parties' intent from the contract as a whole and decline to read ambiguity into an otherwise clear and unambiguous contract. *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 420, 909 P.2d 1323 (1995). We give words their ordinary, usual, and popular meaning, absent a clearly demonstrated contrary intent, and we prefer interpretations that do not render portions of the contract meaningless or ineffective. *Hearst Commc'ns, Inc.*, 154 Wn.2d at 504; *GMAC v. Everett*

---

[7] Tapio does not analyze the "actually incurred" language or otherwise explain, based on contract principles, why we should read the provision to authorize Tapio its attorney fees.

*Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d 1074 (2014) (quoting *Seattle-First Nat'l Bank v. Westlake Park Assocs.*, 42 Wn. App. 269, 274, 711 P.2d 361 (1985)).

Here, Tapio obtained an attorney fee award under the Contract provision providing for attorney fees "actually incurred by the prevailing party."[8] CP at 55. Our analysis of whether the fee award to Tapio under this provision was correct begins with the ordinary, usual, and popular meaning of "actually incurred." *Hearst Commc'ns, Inc.*, 154 Wn.2d at 504. "Actually" means "in act or in fact," and to "incur" is to "become liable or subject to." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 22, 1146 (2002). Thus, the ordinary meaning of fees "actually incurred" by a prevailing party is those fees to which the party "in act or in fact became liable or subject." The limitation on fees "incurred" by the modifier "actually" further supports our reading that the plain meaning of the provision at issue does not authorize an award of attorney fees to Tapio, who was represented by insurance defense counsel. *See also Mills v. Fletcher*, 229 S.W.3d 765, 767-69 (Tex. App. 2007) (analyzing the plain meaning of "actually incurred").

We look also to the context of the entire contract when we interpret a contractual provision. *Viking Bank*, 183 Wn. App. at 713. Here, we note that in some provisions, the Contract refers to "attorney[] fees" or "reasonable attorney[] fees" without limiting modifiers. CP at 49, 51, 52. In other provisions, the Contract limits recovery to "actual attorney[] fees" incurred. CP at 52. We decline to interpret the Contract in a way that renders meaningless this distinction between *attorney fees* and *attorney fees actually incurred* that we find reflected throughout the Contract. *See GMAC*,

---

[8] Tapio also cited RCW 4.84.330, which provides that if a contract specifically allows attorney fee recovery to one party, the other party is also entitled to fees if it prevails. But the statute does not address the situation here, where the Contract does not "specifically provide" for attorney fees to either party if that party did not actually incur the fees. *See* RCW 4.84.330.

179 Wn. App. at 135. Thus, the context of the Contract also supports our reading. For these reasons, we hold that the attorney fee provision at issue is unambiguous and does not authorize an attorney fee award to Tapio here.[9]

## V.  APPELLATE ATTORNEY FEES

Iron Gate requests an award of its attorney fees on appeal under the prevailing party fee provision in the Contract and RAP 18.1(a). Tapio requests that we affirm the trial court and grant Tapio its appellate attorney fees under the same provision. We decline to award either party its appellate fees.

As discussed, we affirm the trial court's denial of Iron Gate's summary judgment motion, motion in limine, and CR 50 motions. Although Tapio is the prevailing party on appeal, we hold that the "actually incurred" language in the Contract's attorney fees provision bars recovery where the prevailing party was represented by insurance defense counsel. Because Tapio fails to argue or explain how it "actually incurred" attorney fees on appeal, we decline to award Tapio its appellate attorney fees under the Contract.

---

[9] We are not persuaded to the contrary by Tapio's cited authority, none of which involves a prevailing party represented by insurance counsel who requested attorney fees under a contractual provision similar to that at issue here. *See Harold Meyer Drug v. Hurd*, 23 Wn. App. 683, 687-88, 598 P.2d 404 (1979) (party's representation by public legal services corporation and having paid no actual attorney fees immaterial to determination of reasonable legal fees under statute); *Pub. Utils. Dist. 1 v. Crea*, 88 Wn. App. 390, 396, 945 P.2d 722 (1997) (attorney fees allowed under statute providing for reasonable attorney fees even if paid by an insurer). The only cited case involving contractually based attorney fees, *Metropolitan Mortgage & Securities Co. v. Becker*, provided for "reasonable attorney fees," apparently without limiting fees for parties represented by in-house counsel. 64 Wn. App. 626, 632, 825 P.2d 360 (1992).

We affirm the trial court's denial of Iron Gate's summary judgment motion, motion in limine, and CR 50 motions, reverse the trial court's attorney fee award to Tapio, and direct that both parties bear their own appellate attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

SUTTON, J.