**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| MAUREEN HAY, a Washington resident; IGOR SMAL, a Washington resident, HANNA SMAL, a Washington resident, JORDAN SMITH, a Washington resident, CAMERON SMITH, a Washington resident, ALEX KULIBABA, a Washington resident, NATALYA MANCHIK, a Washington resident, DAN HART, a Washington resident, SHAWNA HART, a Washington resident, PETER MANNING, a Washington resident, ADRIENNE MANNING, a Washington resident, TAWNY CABRAL, a Washington resident, WHITNEY DeCORIA, a Washington resident, RYAN DeCORIA, a Washington resident, JOSEPHINE PANGAN, a Washington resident, AUBREY BRADLEY, a Washington resident, OZNUR BRADLEY, a Washington resident, CODY WHITNEY, a Washington resident, YVONNE WHITNEY, a Washington resident, HAROON SAKHI, a Washington resident, ADELA SAKHI, a Washington resident, CHRISTINE JOHNSON, a Washington resident, KEN EDWARDS, a Washington resident, SHERRI PENA, a Washington resident, YONG LIM, a Washington resident, AMBER LEE, a Washington resident, WHITNEY SARGENT, a Washington resident, YEVGENIY "JOHN" ZADNEPROVSKIY, a Washington resident, MARINA ZADNEPROVSKIY, a Washington resident, EUN YOUNG LEE, a Washington resident, KURT BERG, a Washington resident, TRACY BERG, a Washington resident, PETE NITO, a Washington resident, JENELYN NITO, a Washington resident, WILLIAM DUNGER, a Washington resident, BANNY CHHOEUN, a Washington resident, SARETH CHHOEUN, a Washington resident, ADAM JACKSON, a Washington resident, SARA JACKSON, a Washington resident, LAYLA BUGADO, a Washington resident, BRAD BUGADO, a Washington resident, PHU DO, a Washington resident, HIEN TRAN, a Washington resident, | No. 50227-5-II


UNPUBLISHED OPINION |

Appellants,

v.

TOM TOLLEN and TIFFINIE TOLLEN, and the marital community composed thereof,

Defendants.

HIGHMARK HOMES, LLC, a Washington limited liability company,

Appellants,

AAA FRAMING CORPORATION, a Washington corporation; ABSI BUILDERS, INC., a Washington corporation; BEST QUALITY FRAMING #I, LLC, a Washington limited liability company; and S&S HOME REPAIR INC., a Washington corporation,

Respondents.

AFDEM & SON'S DOZING, INC., a Washington corporation; AMERICA 1ST ROOFING & BUILDERS, INC., a Washington corporation; BEST SIDERS CORPORATION, a Washington corporation; BIGFOOT CONSTRUCTION, LLC, a Washington limited liability company, ERIK A. ARELLANO d/b/a ERIK CONSTRUCTION, an individual; NJB EXCAVATING, INC., a Washington corporation; BRENT L. FERGUSON d/b/a TOPSHELF MILLWORK INSTALLATION, an individual, and VAB QUALITY WORKS LLC, a Washington limited  liability company,

Third-Party Defendants.

MAXA, C.J. – Maureen Hay and numerous other homeowners (collectively Hay) filed a lawsuit against Highmark Homes, LLC, alleging that the houses they purchased from Highmark had multiple construction defects relating to their framing, siding, and windows.  Highmark then

filed a third-party complaint alleging that various subcontractors, including ABSI Builders, Inc., S&S Home Repair Inc., Best Quality Framing #1, LLC (BQF), and AAA Framing Corporation, were responsible for any defects. Highmark later purportedly assigned its third-party claims to Hay.

Hay and Highmark (collectively appellants) appeal the trial court's summary judgment dismissal of Highmark's third party claims against ABSI, S&S, BQF, and AAA. The appellants argue that the trial court erred because questions of fact existed as to those claims.

We hold that the trial court did not err in granting summary judgment on Highmark's claims (1) against ABSI and S&S for breach of contract based on allegations that they performed defective work, (2) against ABSI and S&S for breach of their contractual duty to defend Highmark, (3) against S&S for breach of its contractual duty to procure liability insurance for Highmark, and (4) against BQF and AAA for breach of contract.

Accordingly, we affirm the trial court's summary judgment orders.

FACTS

*Hay's Complaint*

During 2012 and 2013, Highmark constructed 29 single family houses in a housing development project. Highmark operated as the project's general contractor, which involved supervising the project and providing construction materials. To complete the required work, Highmark utilized the services of multiple subcontractors. ABSI, S&S, BQF, and AAA performed framing and siding work on various houses in the project.

On May 15, 2014, Hay as buyers of Highmark's houses filed a complaint against Highmark and Tom Tollen, Highmark's managing member, alleging that construction defects had allowed water to penetrate the houses' exterior and interior. The complaint alleged statutory

violations, breach of contract, breach of express and implied warranties, and negligence. Hay

sought recovery of the costs to investigate and repair any related property damage.

*Highmark's Tender of Defense and Third-Party Complaint*

On February 19, 2015, Highmark attempted to send a letter tendering defense of the

lawsuit to ABSI. Apparently the letter was sent to the wrong address, preventing ABSI from

receiving the tender until a later summary judgment hearing. ABSI did not accept Highmark's

defense.

Highmark also sent a letter requesting defense and indemnification from S&S's liability

insurer, Navigators Insurance Company.[1] Highmark was named as an additional insured on the

Navigators policy, but Navigators denied coverage because S&S's policy precluded coverage for

work on any project involving more than 10 dwellings.

Highmark subsequently filed a third party complaint against 12 subcontractors, including

ABSI, S&S, BQF, and AAA. Highmark alleged that it had entered into contracts with the

subcontractors to perform labor and/or supply materials for the project. Highmark stated that it

denied Hay's allegations, but that if Hay prevailed on their claims the subcontractors were liable

to Highmark under breach of contract, breach of warranty, and other applicable theories.

Highmark also alleged that the subcontractors owed Highmark a contractual, implied and/or

equitable duty to both defend and indemnify Highmark, and that the subcontractors were in

breach to the extent that they failed to meet those obligations. Finally, Highmark alleged that the

---

[1] S&S had another policy issued by Nevada Capital Insurance Company, but that policy did not take effect until after S&S had completed its work of the housing development project. Nevada Capital denied coverage because the policy did not contain an additional insured endorsement for either Highmark or Tollen.

subcontractors were in breach of their contracts to the extent they were required to name Highmark an additional insured on their insurance policies and failed to do so.

*Subcontractor Contracts*

Tollen testified that Highmark always entered into written contracts with subcontractors who performed work on Highmark projects. Highmark produced contracts with ABSI and S&S. However, Highmark was unable to locate written contracts with BQF or AAA.

The contracts with ABSI and S&S were not specific to the project at issue, but rather were "master" agreements that applied generally to all work performed on Highmark projects. The ABSI agreement was executed on November 30, 2012, and the S&S agreement was executed on January 15, 2013.

ABSI's master agreement stated that it would "control the rights, privileges, duties and responsibilities between [the parties], which arise out of [ABSI] . . . performing any work on [Highmark's] construction projects." Clerk's Papers (CP) at 1913. A section titled "scope of work" stated,

> [ABSI] agrees to perform, supply and finish in a thorough and workmanlike manner, in compliance with all applicable national, state and local building codes and regulations and to the reasonable satisfaction of [Highmark], the specific materials to be furnished and/or work to be performed per the agreed upon price.

CP at 1913.

ABSI's master agreement also referenced an attached indemnification addendum. The indemnification addendum stated that ABSI "agrees to defend, indemnify and hold harmless [Highmark] from any and all claims, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this Subcontract Agreement by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law." CP at 1918.

5

S&S's master agreement had somewhat different terms. The master agreement applied "to any provision of services by [S&S] regardless of whether these terms and conditions are referenced in any purchase order, subsequent contract memo, etc. during the term of this contract." CP at 1499. The master agreement included a warranty provision, which stated that

> [S&S] represents and warrants that all materials, labor and/or systems furnished by [S&S] in connection with the construction of all work performed shall be free of defect for a period of one year for workmanship and systems for two years.

CP at 1500.

S&S's master agreement also included an indemnification requirement, which was stated both in the agreement's primary terms and in an attached addendum. The addendum was identical to the ABSI indemnification addendum.

Finally, S&S's master agreement contained a requirement that S&S obtain general liability insurance and provide Highmark with a certificate of insurance naming Highmark as an additional insured. The master agreement required that the insurance coverage "be of sufficient type, scope, and duration to ensure coverage" of both S&S and Highmark for liability pertaining to any work performed by or on behalf of Highmark. CP at 1500.

Regarding BQF, Tollen testified that he remembered a written contract between Highmark and BQF. He recalled that the contract contained provisions requiring the subcontractor to defend and indemnify Highmark, to make Highmark an additional insured, and to give a warranty for its work. Later, Tollen stated that he did not recall whether Highmark used a project-specific contract or a master contract.

Regarding AAA, Highmark did not produce any specific evidence that AAA had entered into a written contract with Highmark. AAA's owner submitted a declaration stating that

Highmark hired AAA to work on several homes in the project at issue, but that there was no written contract between them – AAA simply issued invoices that Highmark paid.

*Summary Judgment Orders*

In a series of orders, the trial court dismissed Highmark's claims against the subcontractors. First, in March 2016, the court dismissed on summary judgment claims against S&S for express, implied, and equitable indemnity and for breach of express and implied warranty. The court denied summary judgment on S&S's duty to defend Highmark and failure to procure liability insurance for Highmark. The appellants do not appeal this summary judgment order.

Subsequently, ABSI, S&S, and BQF moved for summary judgment. Highmark opposed the motions. In addition, Hay filed joinders to Highmark's pleadings opposing ABSI's and BQF's motions. At oral argument on the summary judgment motions, Hay's counsel informed the trial court that Hay had settled with Highmark and that Highmark would be assigning its claims to them. The trial court granted partial summary judgment and dismissed all claims against ABSI and BQF except for breach of contract, and dismissed the claim against S&S for failure to procure liability insurance for Highmark.

AAA also moved for summary judgment. Highmark did not oppose the motion, but Hay filed an opposition to the AAA motion. In its reply memorandum, AAA noted Hay's prior representation that Highmark had assigned its claims to them but emphasized that Hay had not submitted anything to the court to establish their standing as an assignee. The trial court granted summary judgment on all claims against AAA. At the same time, the court dismissed all remaining claims against ABSI, S&S, and BQF.

On September 13, 2016, Hay and Highmark filed a "Notice of Settlement" stating that all claims against Highmark had been settled. The same attorney signed the notice as attorney for Hay and as attorney for Highmark. On February 16, 2017, the trial court entered an order granting Hay's motion to enter judgment.

*Notice of Appeal*

On March 3, 2017, an amended notice of appeal was filed on behalf of both Hay and Highmark that appealed the trial court's summary judgment orders and the trial court's order granting Hay's motion to enter judgment. The same attorney was listed as counsel for both Hay and Highmark.

The appellants filed an opening brief in July 2017. The brief stated that Hay had settled with Highmark and taken an assignment of Highmark's claims against ABSI, S&S, BQF, and AAA.

*Motion to Dismiss Based on Lack of Standing*

AAA filed a motion in this court to dismiss the appeal, arguing that Hay lacked standing to appeal the trial court's summary judgment orders. Among other things, AAA argued that there was no evidence of an assignment from Highmark to Hay. The other respondents joined AAA's motion.

In response, the appellants submitted a settlement agreement between Highmark and Hay that contained an assignment provision. However, the agreement produced was undated and had been signed only by Highmark and Tollen and not by any of the individual Hay plaintiffs.

A commissioner of this court denied AAA's motion. AAA filed a motion to modify the commissioner's ruling. This court ruled that the standing issue was central to the appeal and would be decided by a panel of judges.

ANALYSIS

A.     HAY'S STANDING TO APPEAL

AAA argues that Hay does not have standing to pursue this appeal.  The appellants argue that Highmark made a valid assignment of its claims to Hay.

However, the assignment is immaterial here because both Highmark and Hay appealed the trial court's orders dismissing Highmark's claims against the subcontractors.  On the notice of appeal, the same person was listed as the attorney for both Highmark and Hay.  Even if Hay was dismissed from the appeal, the appeal would continue with Highmark as the appellant.  Therefore, we need not address Hay's standing because Highmark has standing even if Hay does not.

B.     SUMMARY JUDGMENT STANDARD OF REVIEW

We review summary judgment orders de novo.  *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).  On summary judgment, we construe all evidence and reasonable inferences in favor of the nonmoving party.  *Id.*  Summary judgment is appropriate when the record shows "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  CR 56(c); *see Keck*, 184 Wn.2d at 370.  A fact is material if it affects the case's outcome.  *Keck*, 184 Wn.2d at 370 n.8.  A genuine issue of material fact exists if the evidence would be sufficient for a reasonable jury to find in favor of the nonmoving party.  *Id.* at 370.  "If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment."  *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

The party moving for summary judgment has the initial burden to show there is no genuine issue of material fact.  *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 964, 335 P.3d

9

1014 (2014). A moving defendant can meet this burden by showing that there is an absence of evidence to support the plaintiff's claim. *Id.* Once the defendant has made such a showing, the burden shifts to the plaintiff to set forth specific facts that show a genuine issue of material fact. *See Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012). Summary judgment is appropriate if a plaintiff fails to show sufficient evidence to establish the existence of an element essential on which he or she will have the burden of proof at trial. *Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co.*, 176 Wn. App. 168, 179, 313 P.3d 408 (2013).

C.      BREACH OF CONTRACT CLAIMS AGAINST ABSI AND S&S

The appellants argue that ABSI and S&S breached their master agreements with Highmark by performing work that did not comply with applicable building codes. We hold that the evidence is insufficient to create a question of fact on whether ABSI and S&S breached their contracts by performing defective work.[2]

1.    Breach of Contract Principles

To raise a successful claim for breach of contract, a plaintiff must show that a contract imposes a duty, that the defendant breached that duty, and that the breach proximately caused the plaintiff's harm. *C 1031 Props., Inc. v. First Am. Title Ins. Co.*, 175 Wn. App. 27, 33, 301 P.3d 500 (2013). Breach occurs when a defendant fails to perform a contractual duty. *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 230, 317 P.3d 543 (2014). In general, parties to a contract are held to a standard of substantial compliance. *Id.* at 220. In a

---

[2] Initially, ABSI and S&S argue that the master agreements they entered into with Highmark cannot apply to this case because the contracts omit essential terms. But the agreements expressly state that they apply to all future work by the subcontractors for Highmark, and they contain the relevant material terms regarding that work.

suit for breach of contract, a partial breach is sufficient to give rise to a cause of action for damages. *Id.*

2. Evidence of Breach of Contract

The appellants argue that ABSI and S&S breached their master agreements with Highmark by performing defective work on the Hay plaintiffs' houses that failed to meet the relevant contractual standards. We hold that the evidence Highmark presented in the trial court was insufficient to create a question of fact regarding a breach of contract.

a. ABSI Contract Breach

ABSI's master agreement included a provision stating that ABSI would "perform, supply and finish in a thorough and workmanlike manner, in compliance with all applicable national, state and local building codes and regulations and to the reasonable satisfaction of [Highmark], the . . . work to be performed." CP at 1913. Relevant state law includes the State Building Code Act (SBCA), chapter 19.27 RCW. Former RCW 19.27.031(1)(a) and (b) (2003) expressly adopt the International Building Code (IBC) and International Residential Code (IRC). Therefore, Highmark arguably could have demonstrated that ABSI was in breach if ABSI's work failed to meet the relevant requirements, stated either in chapter 19.27 RCW, the IBC or the IRC.

However, Highmark did not present any evidence on summary judgment identifying what work ABSI agreed to perform, what work ABSI actually performed, whether that work was defective, or whether any alleged defects resulted in damage to the houses. This evidence typically would be provided through expert testimony, explaining what the relevant code or specifications required and how the defendant's work failed to meet those requirements. *See, e.g.*, *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425-26, 10 P.3d 417 (2000).

The record in this case states only that ABSI did framing work. The record does not identify whether there were any defects with any of the framing on the houses that ABSI worked on. Further, nothing in the record demonstrates how ABSI's framing work failed to meet the relevant technical requirements. Therefore, ABSI showed an absence of evidence to support Highmark's claim for breach, which then shifted the burden to Highmark to identify evidence of a breach to raise a genuine issue of material fact. *Lee*, 183 Wn. App. at 964. Highmark failed to present such evidence.[3]

      b.    S&S Contract Breach

A provision in S&S's master agreement states that S&S "represents and warrants that all materials, labor and/or systems furnished by [S&S] in connection with the construction of all work performed shall be free of defect for a period of one year for workmanship and systems for two years." CP at 1500.[4] Under that provision, Highmark arguably could have demonstrated a breach by presenting evidence that the work performed by S&S was defective in some way.

However, as with ABSI, Highmark did not present any specific evidence in the trial court regarding the work S&S agreed to perform, the work S&S performed, whether that work was defective, or whether any alleged defects resulted in damage to the houses. The summary judgment record contains only a general reference that S&S did framing and siding work on five houses in the housing development. No evidence indicates whether work on those houses was

---

[3] The appellants refer to expert testimony regarding defects at particular houses within the project. But the record does not specify which houses contained those defects, or whether ABSI or S&S performed work on the referenced houses. Therefore, that evidence is not material to the claims against ABSI and S&S.

[4] The appellants cite to the master agreement's warranty, but argue that S&S breached a contractual provision requiring that S&S comply with applicable building codes. However, S&S's master agreement did not contain any reference to building codes.

defective. As with ABSI, S&S showed an absence of evidence to support Highmark's claim for breach, which shifted the burden to Highmark to identify evidence showing a genuine issue of material fact. *Lee*, 183 Wn. App. at 964. Highmark failed to present such evidence.

3. Breach of Implied Statutory Duty

The appellants argue that ABSI and S&S violated requirements under the SBCA, and as a result breached their contracts with Highmark. We disagree.

The intent of the SBCA is to provide a uniform building code throughout the state. *Moore v. Wayman*, 85 Wn. App. 710, 725, 934 P.2d 707 (1997). To achieve this purpose, the statute incorporates certain substantive requirements, including the IBC and IRC, and brings them into effect in all counties and cities. Former RCW 19.27.031. To ensure compliance, RCW 19.27.050 expressly states that "[t]he state building code required by this chapter shall be enforced by the counties and cities."

The appellants appear to argue that the provisions of chapter 19.27 RCW were incorporated into ABSI's and S&S's master agreements. We do not need to decide this issue because even if the appellants are correct, the same factual problems with Highmark's claims addressed above remain. As stated above, Highmark did not submit any evidence that identifies what work ABSI or S&S agreed to perform or did perform, whether that work was defective, or whether any defects resulted in damage to the houses. Therefore, Highmark failed to carry its burden of showing a genuine issue of material fact. *Lee*, 183 Wn. App. at 964.

Accordingly, we hold that the trial court did not err in granting summary judgment and dismissing Highmark's breach of contract claims regarding defective work against ABSI and S&S.

D.     CONTRACTUAL DUTY TO DEFEND CLAIMS AGAINST ABSI AND S&S

The appellants argue that ABSI and S&S breached their master agreements by failing to defend Highmark.[5]  We disagree.

A contractual duty to defend a complaint arises if, based on the facts known at the time of the tender of defense, liability for the claims stated in the complaint eventually would fall on the indemnitor.  *See Knipschield v. C-J Recreation, Inc.*, 74 Wn. App. 212, 216, 872 P.2d 1102 (1994).[6]  Courts may consider the applicable complaint.  *See id.* at 219.  Courts also look to other sources to identify whether the duty to defend applies.  *See*, *e.g.*, *George Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.*, 67 Wn. App. 468, 472, 836 P.2d 851 (1992) (interrogatory answers).

Here, Highmark tendered the defense to ABSI on February 19, 2015, stating that the plaintiffs' complaint alleged that the framing in the project's houses had been defectively installed.  But the complaint stated only that the plaintiffs' houses had construction defects that allowed water to penetrate the houses' interior and exterior building surfaces and framing components.  The complaint did not specify how the water penetration occurred, or specifically what defects existed.  And the complaint did not allege that Highmark's framing subcontractors had caused the defects.

---

[5] The appellants also initially raised a claim regarding failure to indemnify, but stated in the reply brief that they no longer were asserting that claim because the duty to indemnify had not accrued at the time of the appeal.

[6] The trigger for a duty to defend for standard contract is different than the duty to defend applied to insurance contracts, where the issue more commonly arises.  In insurance cases, the duty arises when a complaint, construed liberally, alleges facts that, if proven, would impose liability within the insurance policy's coverage.  *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 802-03, 329 P.3d 59 (2014).

Further, as discussed above, none of that information is in the record. In its interrogatory answers, Highmark stated only that ABSI performed framing work and that S&S did framing and siding.[7] But the record does not include anything suggesting that ABSI's or S&S's work caused the alleged damage. The only information supplementing the parties' complaints and Highmark's interrogatory responses were Tollen's depositions. But he testified that he did not have personal knowledge of the work that S&S completed. Similarly, Tollen testified that he was unaware of whether the plans required ABSI to install weather-resistive barriers or flashing. Although Tollen testified that other Highmark employees might have better knowledge about the construction process and subcontract-specific tasks, that information is not included in the record.

The record contains only general allegations that houses in the project sustained water damage without identifying the source of that water damage or whether the work by ABSI or S&S was related in any fashion to the source. And the record does not show facts demonstrating that liability would eventually fall on either ABSI or S&S, thereby triggering their duty to defend Highmark. *See Knipschield*, 74 Wn. App. at 216. As a result, Highmark failed to demonstrate an issue of fact regarding whether ABSI or S&S breached a duty to defend Highmark.

Accordingly, we hold that the trial court did not err in granting summary judgment and dismissing Highmark's duty to defend claims against ABSI and S&S.

E.      CLAIM AGAINST S&S FOR FAILURE TO PROCURE INSURANCE

The appellants argue that S&S breached its master agreement by failing to procure liability insurance for Highmark as required. We disagree.

---

[7] The record is inconsistent even on what tasks the subcontractors performed. In his deposition, Tollen testified that although the records indicated S&S did siding work on two lots, S&S actually constructed only the decks on those lots.

The S&S master agreement contained three requirements regarding the procurement of liability insurance coverage. First, upon execution of the master agreement and before S&S performed any work for Highmark, S&S had to arrange for Highmark to be an additional insured on a general liability insurance policy "providing coverage for completed operations, products liability, and contractual liability." CP at 1499. The appellants concede that S&S satisfied this requirement through the Navigators policy.

Second, the policy had to comply with certain coverage limits, including aggregate and per occurrence limits. The appellants do not contest that the Navigators policy complied with these requirements.

Third, the agreement stated that the required insurance coverage "shall be of sufficient type, scope, and duration to ensure coverage of [S&S and Highmark] for liability related to any manifestation date within the applicable statutes of limitation and/or repose which pertain to any work performed by or on behalf of [Highmark] in relation to the Project." CP at 1500.

The appellants argue that this third provision required S&S to ensure that Highmark had the required coverage for the project, and that S&S failed to satisfy this obligation because Navigators denied coverage. S&S argues that it satisfied its obligation by providing the required coverage and additional insurer endorsement, and that it cannot be held responsible for the insurer's denial of coverage based on a policy exclusion.

Resolution of this issue depends on the meaning of the phrase "ensure coverage" in paragraph 2.4 of the master agreement. When interpreting contract language, we attempt to ascertain the parties' mutual intent by focusing on the reasonable meaning of that language. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712-13, 334 P.3d 116 (2014). If

a provision is subject to two or more reasonable interpretations, it is ambiguous. *Id.* at 713. We generally construe ambiguous provisions against the contract's drafter. *Id.*

Here, at least two interpretations are possible. First, we could interpret this phrase as a general requirement to ensure that Highmark was a covered person – as an additional insured – under a liability policy that *potentially* covered a particular loss, subject to the terms and condition of that policy. Under this interpretation, S&S's obligation would be to ensure that a liability policy exists, but not to guarantee that the insurer would actually *extend* coverage to Highmark for any specific claim. This interpretation is consistent with the intent of an additional insured endorsement, which provides the same scope of coverage to the additional insured as to the named insured. *See Hartford Ins. Co. v. Ohio Cas. Ins. Co.*, 145 Wn. App. 765, 778, 189 P.3d 195 (2008) ("[C]ontractors who have insisted upon being named as additional insureds will reasonably expect to be covered for the same completed operations as their subcontractors.").

Further, this interpretation would recognize that at the time S&S entered into the master agreement and procured the additional insurer endorsement in January 2013, S&S did not know that the exclusion for projects involving more than 10 dwellings (or any other exclusion) would apply to its work. At that time, S&S had not yet started work on the housing project at issue.

Second, we could interpret the phrase "ensure coverage" as requiring S&S to procure an insurance policy that would *actually* cover all claims that might be asserted against Highmark. Under this interpretation, S&S essentially would be acting as a guarantor – through breach of contract liability – if the insurer denied coverage for any reason.

We hold that the first interpretation of the agreement language is more reasonable. The agreement did not require that S&S obtain a different policy and a different additional insured endorsement for each project. It required a general policy that provided coverage for completed

operations, products liability, and contractual liability up to certain specified coverage amounts. All liability policies contain various terms, conditions, and exclusions. S&S had no way of knowing when it procured the policy what exclusions might apply to some unidentified future project.

Even if the second interpretation also is reasonable, the term "coverage" would be ambiguous as to whether the insurance that S&S was required to procure would have to actually cover any loss. We construe the term against Highmark, the drafter. *Viking Bank*, 183 Wn. App. at 713.

We conclude that S&S met the master agreement's requirements by naming Highmark as an additional insured on a policy that satisfied the liability requirements. Accordingly, we hold that the trial court did not err in dismissing Highmark's claim against S&S for failing to procure insurance for Highmark.

F.      BREACH OF CONTRACT CLAIMS AGAINST BQF AND AAA

The appellants argue that issues of fact exist regarding whether Highmark had written contracts with BQF and AAA and whether BQF and AAA breached those contracts. The appellants apparently claim that BQF's and AAA's breaches involve defective work, failure to defend, and failure to procure insurance. We hold that even if written contracts existed that imposed contractual obligations, Highmark did not submit sufficient evidence to create questions of fact regarding breach.

The same evidentiary problems addressed above regarding ABSI and S&S apply equally to any defective work claims against BQF and AAA. Highmark did not present any specific evidence regarding the work BQF and AAA agreed to perform or actually completed, whether that work was defective, or whether the defects caused damage to the houses. The summary

18

judgment record contains only a general reference to BQF and AAA performing framing and siding work in the housing development.

Regarding the other breach of contract claims, Highmark presented no evidence that it tendered the Hay claims to BQF or AAA for defense, and Highmark presented no evidence regarding whether BQF or AAA procured liability insurance for Highmark or whether the insurers denied coverage.

Accordingly, we hold that the trial court did not err in granting summary judgment and dismissing Highmark's breach of contract claims against BQF and AAA.

CONCLUSION

We affirm the trial court's summary judgment orders.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

LEE, J.

MELNICK, J.

19